**TOPP–COLA COMPANY, a corporation, Plaintiff,**

v.

**COCA–COLA COMPANY, a corporation, Defendant.**

United States District Court
S. D. New York.
July 25, 1960.

Burgess, Ryan & Hicks, New York City, for plaintiff, Cushman, Darby & Cushman, Washington, D. C., James L. Dooley, Washington, D. C., of counsel.

Gilbert H. Weil, and Alfred T. Lee, New York City, for defendant, Pope F. Brock, John D. Goodloe, Julius R. Lunsford, Jr., Atlanta, Ga., of counsel.

FREDERICK van PELT BRYAN, District Judge.

Plaintiff, a Georgia corporation, with its principal place of business in Savannah, Georgia, is the owner of the trademark Topp-Cola. Defendant, a Delaware corporation, with its principal place of business in New York, is the owner of the trademark Coca-Cola. Both marks are duly registered in the United States Patent Office under the Lanham Act, 15 U.S.C.A. § 1051 et seq. The present suit involving the marks of the respective parties arises primarily out of the following circumstances:

Plaintiff filed an application to register its mark under the Laws of the Commonwealth of Puerto Rico with the Secretary of State of that Commonwealth. Defendant, whose mark is already registered in Puerto Rico, has filed a notice of opposition[1] to plaintiff's registration, claiming that plaintiff's mark is so similar to defendant's mark

"* * * as to be likely to cause confusion in the mind of the public and to deceive purchasers * *."

and that

"* * * ordinary purchasers, seeing the word Topp-Cola applied to a non-alcoholic beverage similar to the one bearing the * * * (defendant's) * * * trademark

Coca-Cola will be confused and deceived."

Plaintiff seeks a judgment (a) declaring that the mark Topp-Cola as applied to a cola beverage is not likely to cause confusion or to deceive purchasers, that purchasers are not likely to be confused as to the source or origin of beverages sold under the respective marks, and that Topp-Cola does not infringe upon the United States and Puerto Rican registrations of defendant's mark, and (b) enjoining defendant from further opposing plaintiff's application for registration in Puerto Rico. It also seeks other injunctive relief covering a range of defendant's activities which are alleged to interfere with "the legitimate expansion of plaintiff's cola beverage business."

Jurisdiction is alleged under the Lanham Act, 15 U.S.C.A. §§ 1119 and 1121, 28 U.S.C. § 1338, and under the diversity and declaratory judgment provisions of the Judicial Code, 28 U.S.C. §§ 1332 and 2201.

The case is before me on defendant's motion for summary judgment pursuant to Rule 56, F.R.Civ.P., 28 U.S.C.A.

The complaint makes for some confusion by lumping what appear to be two seperate and distinct claims in a single count.

In the first portion of the complaint plaintiff alleges that it uses its mark, Topp-Cola, in interstate commerce as the trademark for its cola flavored beverage; that the mark was registered under the Lanham Act after disclaimer as to the word "Cola"; that the registration is now in full force and effect; that plaintiff is engaged in a program of expanding its sales beyond the continental United States; and that defendant

---

1. The Puerto Rico Trademark Act, § 196, 10 L.P.R.A. § 196, provides:

"In cases where notice of opposition is filed the Secretary of State shall notify the applicant with a statement of the grounds of such opposition.

"Whenever application is made for the registration of a trade-mark applied to goods of the same descriptive properties, which is already registered in the Department of State in the name of another; or for the registration of which application has been previously made; or so nearly resembling such trade-mark or another already known belonging to and used by another, that in the opinion of the Secretary of State may deceive the public, the Secretary of State shall decide who is entitled to use such trademark and as to the sufficiency of the objections against registration."

manufactures a soft drink similar to plaintiff's and has a Lanham Act registration on its mark "Coca-Cola".

The complaint then recites the proceedings taken in Puerto Rico to register plaintiff's mark and defendant's opposition to such registration. It alleges that the mark Topp-Cola is not so similar to the mark Coca-Cola as to confuse the public and deceive and confuse purchasers as to origin and that defendant "is well aware of * * * numerous judgments holding that the word 'Cola' as applied to a cola type beverage is generic and in the public domain and is freely available for use in commerce which may be regulated by Congress * * *."

This part of the complaint concludes with the allegation that when defendant filed its opposition in the Puerto Rican proceeding it had "actual and constructive knowledge" of the Lanham Act registration of plaintiff's mark.

These allegations can be said to constitute a claim complete in itself. The relief sought on this claim is a declaratory judgment as to the lack of such similarity in the marks as to cause likelihood of confusion and deception and confusion as to source or origin and an injunction prohibiting opposition to plaintiff's Puerto Rican registration.

The balance of the complaint refers back to the allegations concerning the Puerto Rico proceedings and the other facts previously alleged but presents them in a rather different context. It is alleged that defendant filed its Notice of Opposition in Puerto Rico with the purpose and intent of

" * * * interfering with the legitimate expansion of the plaintiff's business in commerce which can be regulated by Congress, and in other commerce, and that this interference is part of a plan to hamper and frustrate competition in cola type beverages emanating from corporations domiciled in the United States and that the defendant is thereby attempting to restrain competition in the cola beverage industry in commerce which can be regulated by Congress, and in other commerce, and is thereby competing unfairly with the plaintiff to the plaintiff's damage."

It is claimed that defendant is engaged in a scheme, of which its opposition to the Puerto Rican registration of plaintiff's mark is a part, to harass plaintiff and other competitors with expensive and vexatious litigation respecting local use and registration of its trademark, and that this is a form of "economic duress" which will intimidate local bottlers and discourage them from "affiliating themselves with plaintiff's organization" and from selling plaintiff's beverage. The complaint concludes with the allegation that unless defendant is restrained from "such conduct" it will continue "to restrain competition" in domestic and other commerce by "opposing every effort of the plaintiff to obtain local registration of its trademark in the locations of its use."

Based on this additional and separate claim, plaintiff seeks to enjoin defendant from interfering with "the legitimate expansion of the plaintiff's cola beverage business" by asserting "privately or publicly" that Topp-Cola is an infringing mark and from opposing plaintiff's attempts to obtain local registration of its mark in "areas where said trademark is used or is to be used." There is also a prayer for treble damages and attorney's fees.

Defendant has answered denying that this court has jurisdiction by reason of diversity of citizenship, or over what it alleges to be the single controversy arising out of the application to register plaintiff's mark in Puerto Rico, or under the Federal Declaratory Judgments Act. It denies in substance that it has illegally interfered with plaintiff's rights in any way.

What I consider to be the two seperate claims alleged in the complaint will be considered separately.

Before doing so, however, it should be noted that although defendant denies that there is diversity of citizenship between the parties "in any substantial

704

sense", there is diversity jurisdiction under 28 U.S.C. § 1332, quite apart from whether there is jurisdiction under the Lanham Act or under 28 U.S.C. §§ 1338 and 2201. It is not denied that plaintiff is a Georgia corporation with its principal place of business there and that defendant is a Delaware corporation with its principal place of business in New York.

█ Defendant's allegation that it has an office in Georgia and is amenable to service of process there does not exclude diversity jurisdiction in this court. Under the recent jurisdictional requirements of 28 U.S.C. § 1332(c) there would be lack of diversity only if defendant had its "principal" place of business in Georgia and it has admitted that its principal place of business is in New York. It also seems plain that the matter in controversy exceeds the value of $10,000 exclusive of interest and costs under § 1332.

1. The claim arising from defendant's opposition to Puerto Rican registration of plaintiff's mark.

In essence, plaintiff's claim on this branch of the case is based on the premise that defendant by filing the notice of opposition to registration of its mark Topp-Cola in Puerto Rico has charged that plaintiff's mark infringes defendant's mark Coca-Cola. Plaintiff asserts that there is no infringement and that it is entitled to declaratory judgment to that effect and injunctive relief.

The defendant takes the position, however, that the filing of its notice of opposition in Puerto Rico does not constitute a charge of infringement and does not give rise to a justiciable controversy upon which this court can render a declaratory judgment under the Declaratory Judgments Act or grant injunctive relief. It urges that the only proper forum in which the questions raised by its notice can be determined is before the Secretary of State of Puerto Rico in the course of the Puerto Rican administrative proceedings for trademark registration.

█ It is now well settled that the Lanham Act confers substantive rights upon the holder of a mark registered under it. Such rights are "uniform throughout the Union" and their interpretation is not limited by local law. S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176.

█ The registrant has the right to exclusive use of its registered mark in "commerce", defined by the Act (15 U.S.C.A. § 1127) as "all commerce which may lawfully be regulated by Congress." This, of course, includes commerce in Puerto Rico though from a reading of the defendant's brief one would suppose that it is under the curious misapprehension that Puerto Rico is not included within the ambit of congressional power over commerce and is in fact to be treated as a foreign country. If the matter needs to be made any plainer it is only necessary to refer to the following language of § 1127:

"The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commence [commerce] from interference by state or *territorial* legislation." (Emphasis supplied.)

A mark is registrable under the Act only if it does not so resemble a mark previously registered or used "as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers." (15 U.S.C.A. § 1052(d)). There are no limitations under section 1057(b) noted on plaintiff's certificate of registration and the certificate is prima facie evidence of the validity of the registration and of registrant's "exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate" in any part of the United States.

Had the defendant chosen to oppose registration of plaintiff's mark in the Patent Office the Commissioner's determination that the Topp-Cola mark was registrable would have been entitled to

weight upon a review by the courts. Frito Co. v. General Mills, Inc., 5 Cir., 202 F.2d 936, certiorari denied 346 U.S. 827, 74 S.Ct. 47, 98 L.Ed. 352. However, plaintiff now has no remedy under the Lanham Act to determine administratively or otherwise the scope or validity of its mark. Defendant, on the other hand, can still apply to cancel plaintiff's mark, 15 U.S.C.A. § 1064.[2]

█ It seems to me quite plain that the registrant, when faced with a charge from a competitor that his registered mark is "likely to cause confusion and to deceive purchasers", may maintain an action for a declaratory judgment to determine the extent and scope of its rights under a Federal Lanham Act registration.

Elka Toy & Novelty Mfg. Corp. v. Fisher-Price Toys, Inc., D.C.S.D.N.Y., 136 F.Supp. 524, relied on by the defendant, is not to the contrary. There neither plaintiff nor defendant had a federally registered mark. Cf. Kaplan v. Helenhart Novelty Corp., 2 Cir., 182 F.2d 311.[3]

█ Since plaintiff, as the holder of a registered mark may bring an action for a declaratory judgment to resolve questions raised by such a charge by a competitor, the sole question of substance here is whether, under the circumstances, there is an "actual controversy" between the parties arising from the notice of opposition filed in the Puerto Rican proceeding which would come within the purview of the Declaratory Judgments Act, 28 U.S.C. § 2201. I hold that there is such a controversy and that the notice of opposition in Puerto Rico is in substance a charge that plaintiff's mark is so similar to defendant's mark as to be

likely to cause confusion in the minds of the public and to deceive purchasers, and would also tend to cause confusion as to source or origin. These are matters of import to the plaintiff and they call into question the scope of plaintiff's right to use the mark in commerce in any part of the United States.

Defendant places heavy reliance on Merrick v. Sharp & Dohme, 7 Cir., 185 F.2d 713, certiorari denied 340 U.S. 954, 71 S.Ct. 573, 95 L.Ed. 687, and urges that the case requires a contrary conclusion. Assuming that the Merrick case is correctly decided, it has no application here. There the plaintiff, seeking a declaratory judgment, had applied to register his mark under the Lanham Act. The defendant had filed a notice of opposition under 15 U.S.C.A. § 1063. Prior to the final hearing before the examiner of interferences the applicant brought its declaratory judgment action. After commencement of the action, and after further administrative proceedings in the Patent Office, review of the Patent Office decision was pending before the courts pursuant to 35 U.S.C. § 63.[4]

Thus the statutory scheme envisaged by the Lanham Act for determination of registrability would have been compromised had the applicant been permitted to maintain an action for declaratory judgment against the party opposing registration. As the court stated (185 F.2d at page 717):

"Congress has confided the registration of trade-marks to the Patent Office of the United States. The courts of the United States have no jurisdiction over registration proceedings except that appellate jurisdiction given them by the Trade-Mark Act."

N.Y., 175 F.Supp. 646, Judge Cashin demonstrates that a plaintiff who has no registered mark and who seeks a declaration of invalidity of defendant's mark has the same rights (as regards standing) to a declaration under the trademark laws as under the copyright or patent statute.

2. Plaintiff's mark has not yet been registered for five years and thus is not incontestable under Section 1065. Plaintiff makes the point, not without force, that its right to an incontestable mark is also put in issue at least collaterally by defendant's charge of infringement.

3. In fact, in the recent case of Eastman Kodak Co. v. Velveray Corp., D.C.S.D.

4. Now 35 U.S.C. § 146.

Here the situation is quite different. Plaintiff already has its certificate of registration. There is no patent office procedure by which plaintiff can test the validity and scope of its registration. A declaratory judgment action is in no way subversive of Patent Office procedure. The reason which led the court in the Merrick case to hold that a notice of opposition filed in the Patent Office, challenging the right to register, did not charge infringement, is not present here.

Comparison of the notice of opposition in Puerto Rico with the statutory definition of infringement (15 U.S.C.A. § 1114(1)) indicates that they are for all practical purposes the same.

---

15 U.S.C.A. § 1114(1):

"Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services; * * *."

Notice of Opposition, para. 8:

"The applicant's alleged trade-mark Topp-Cola is so similar to opposer's registered trade-mark Coca-Cola as to be likely to cause confusion in the mind of the public and to deceive purchasers. The applicant's mark is applied to goods of the same descriptive properties as in the opposer's trade-mark; and its registration will damage opposer in that ordinary purchasers, seeing the words Topp-Cola applied to a non-alcoholic beverage similar to the one bearing the opposer's trade-mark Coca-Cola will be confused and deceived."

---

No doubt not every notice of opposition can be taken as a charge of infringement. However, it is difficult to see how the plaintiff could rely on the prima facie validity of its mark to conduct its business throughout the United States (see Dawn Donut Co. v. Hart's Food Stores, Inc., 2 Cir., 267 F.2d 358) in the face of the claim asserted in Puerto Rico by the defendant. Plaintiff is faced with an immediate threat to its prospective operations in Puerto Rico and to the use of its registered mark there.[5]

The situation presented here is well within the penumbra of the actual controversy requirements of the Declaratory Judgments Act. Plaintiff claims a presently existing right to use its mark in Puerto Rico by virtue of its federal registration and asserts that it is about to do so. Defendant has challenged that right. This is no "hypothetical or abstract" dispute. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617. This is an actual controversy over the scope and extent of a presently existing right. I hold that plaintiff is entitled to maintain this action for a declaratory judgment determining its rights in Puerto Rico as against the defendant under its registered mark.[6] See American Machine &

5. The Puerto Rico statute, 10 L.P.R.A. § 196, supra, not only authorizes the Secretary of State to determine who is entitled to register but purports to grant authority to determine whether the applicant has a righ to use the mark in issue.

6. I hold merely that the action for declaratory relief may be maintained. I express no view as to whether or not, if plaintiff succeeds, it may be entitled to further injunctive relief with respect to defendant's opposition in Puerto Rico. This question is not now before me.

Metals v. De Bothezat Impeller Co., 2 Cir., 166 F.2d 535–536.

Defendant is not entitled to summary judgment on this claim.

2. The claim arising from defendant's alleged interference with the expansion of plaintiff's business.

The second claim alleged in the complaint charges in substance that defendant is engaged in a scheme or plot to hamper and interfere with the legitimate expansion of plaintiff's business both in commerce subject to regulation by Congress and "in other commerce". The scheme is alleged to consist in a resort to vexatious and expensive trademark litigation presumably, though the complaint does not say so, in foreign commerce, as a form of "economic duress". It is alleged that by this conduct defendant is attempting to restrain competition in the cola beverage industry and is competing unfairly with the plaintiff.

There is no doubt that trademark abuses in foreign countries by an American corporation may, under some circumstances, be actionable in the federal courts. (Steele v. Bulova Watch Co., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252; Timkin Roller Bearing Co. v. United States, 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199), though it may be that such an action requires at least that defendant's conduct has had a substantial effect on United States commerce, and that the defendant is a United States citizen and perhaps that there is no conflict with trademark rights established under the foreign law. See Vanity Fair Mills, Inc. v. The T. Eaton Co., 2 Cir., 234 F.2d 633, but cf. Ramirez & Feraud Chili Co. v. Las Palmas Food Co., D.C. S.D.Cal., 146 F.Supp. 594, affirmed 9 Cir., 245 F.2d 874.

It is unnecessary, however, to determine whether the vague and somewhat confusing allegations of the complaint on this branch of the case state a claim on which relief can be granted within the ambit of these cases. For, on this motion for summary judgment plaintiff has utterly failed to show any factual basis for such a claim and defendant has conclusively demonstrated that no such factual basis exists.

On summary judgment the pleadings may be pierced and any factual issues which they raise may be negated by affidavit. 6 Moore, Federal Practice (2d ed.) ¶¶ 56.11, 56.15[2].

The *only* fact plaintiff relies on to establish a "plot" or "scheme" to exclude plaintiff from foreign commerce is the notice of opposition filed by defendant in Puerto Rico.

As to this defendant's affidavits are comprehensive and detailed and include affidavits of its General Counsel and Vice President. Defendant's affidavits set forth at length its practices with respect to the protection of its trademark, both in the United States and abroad.

In very brief summary defendant has shown that its policy in this respect is that it generally opposes a competitor's attempt to register a mark if under the law which obtains in a particular jurisdiction it has at least a fifty-fifty chance of success in so doing. The decision was reached to oppose plaintiff's attempt to register its mark in Puerto Rico on the basis of defendant's considered appraisal of the state of the law with respect to trademarks and its chances of success. All of defendant's affidavits strenuously deny that there is any "scheme" or "plot" to exclude competitors from foreign commerce. Nothing in any of them gives rise to the slightest inference that such a "scheme" or "plot" exists.

Of the only two counter-affidavits submitted by plaintiff which are relevant on this issue, one, by plaintiff's President, merely states, without any facts at all, that the allegations of the complaint are true and defendant's affidavits are false. This plainly adds nothing to the picture. The second, by plaintiff's attorney states:

"2. Due to the nature of this case it is impossible for the Plaintiff to offer affidavits establishing, as a matter of fact, the knowledge, intentions, plans and purposes of the Defendant * * *.

"3. After reviewing the affidavits of John Goodloe, Lee Price, and Grace Barnes, I am convinced that it would be a waste of my client's money to proceed to Atlanta and take the deposition of these individuals in the hope of uncovering admissions as to the existence of the knowledge, intentions, plans and purposes recited in paragraphs * * *.

"4. It is my opinion as an attorney that the truth and correctness of the matters mentioned hereinabove are questions to be determined by a jury after being given an opportunity to weigh the credibility of the said [defendant's affiants] * * *."

■ Thus, plaintiff has produced nothing to support its claim. It takes the position that it is entitled to a trial solely on the issue of the credibility of defendant's witnesses. It is true that generally "the court should not resolve a genuine issue of credibility * * * on the motion for summary judgment." 6 Moore, Federal Practice (2d ed.) ¶ 56.15 [4]. But this does not mean that any plaintiff, armed with a complaint barely sufficient to survive a motion to dismiss, can force a defendant to a protracted trial merely by suggesting that the defendant's affidavits may be false. Such a rule would make a mockery of the summary judgment procedure under Rule 56.

Here, not one fact, not one single circumstance, has been shown which bears out the allegations of this portion of the complaint. Plaintiff refuses to "waste" money to take depositions. But it insists that it has the right to take up the time of the court and to put the defendant to the expense of what will necessarily be a lengthy trial without any effort on its part to bring out the facts or to determine the truth. The language of Schneider v. McKesson & Robbins, Inc., 2 Cir., 254 F.2d 827, 831 is apposite:

"Their failure to make use of the discovery procedure is also destructive of the contentions that they have not had a sufficient opportunity to test the veracity of facts stated in the supporting affidavits."

■ This motion for summary judgment is not prematurely made. Plaintiff steadfastly refuses to avail itself of the opportunities given it by the rules to inform itself of the facts. All that can be said for this plaintiff is that it hopes that something will "turn up" on the trial and this is wholly insufficient to justify denial of a motion for summary judgment. See Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715; Orvis v. Brickman, 90 U.S.App.D. C. 266, 196 F.2d 762.

■ The complaint here appears to have been drawn in order to get around the holding of Vanity Fair Mills v. The T. Eaton Co., supra. Stripped of the conclusory and unsupported allegations as to unfair competition, with an overtone of Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note, violation, and the vague and disproven allegations as to defendant's plans and programs, what the plaintiff really wants is an adjudication of its trademark rights against Coca-Cola in a multitude of unspecified foreign countries. A far more modest demand than this was rejected in Vanity Fair v. The T. Eaton Co., supra.

There is no genuine issue as to any material fact with respect to this portion of plaintiff's claim. The facts show that it has no merit and defendant is entitled to summary judgment with respect to it.

Defendant's motion for summary judgment is therefore denied as to the claims alleged in the paragraphs of the complaint numbered I to XVII inclusive. Defendant's motion for summary judgment as to the claims embraced within the paragraphs of the complaint numbered XVIII, XIX and XX is granted. These paragraphs of the complaint, together with paragraphs 4, 5 and 6 of the prayer for relief will be stricken. Judgment will be entered accordingly.

It is so ordered.