Randolph **PHILLIPS**, Plaintiff,

v.

John D. **MURCHISON** and Clint W. Murchison, Jr., individually and as persons doing business under the firm name and style of Murchison Brothers, Defendants.

No. 61 Civ. 713.

United States District Court
S. D. New York.

March 25, 1966.

Randolph Phillips, plaintiff, pro se.

Townley, Updike, Carter & Rodgers, New York City, for defendant, John D. Murchison, J. Howard Carter, Lee W. Meyer, Ronald S. Daniels, Anson M. Keller, New York City, of counsel.

RYAN, Chief Judge.

Defendant John Murchison has moved under Rule 56(b) F.R.Civ.P. for summary judgment dismissing the amended and supplemental complaint with prejudice upon the ground that the matter complained of in the pending counts of the said complaint are absolutely privileged as a matter of law under Section 337 of C.P.A. (now Sec. 74 of the Civil Rights Law). This privilege has been pleaded as an affirmative defense to all counts.[1]

Plaintiff has moved for an order "vacating that part of this Court's memorandum and order of May 8, 1964 [by Judge Dawson] dismissing Counts 1, 2, 3, 8, 13 and 14 of the amended and supplemental complaint".

Although the suit is filed against Murchison brothers, individually and as a partnership, the only defendant who has been served and has appeared is John D. Murchison. The complaint rests on allegedly libelous newspaper reports but the alleged offending newspapers have not been sued. This is the fourth complaint since 1961 which plaintiff has filed in support of the charge that he was defamed—the three prior complaints were dismissed by Judge Dawson as were six counts of the fourth leaving for our disposition the 6th, 7th, 9th, 10th, 11th and 12th counts.

At the outset, we deny plaintiff's motion because this Court has no au-

---

1. Section 337 of the New York Civil Practice Act (now Section 74 of the Civil Rights Law) provides in relevant part:

"A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published."

thority or power to review Judge Dawson's dismissal of these counts on May 8, 1964. That after his decision the Judge signed an order to show cause to reconsider Counts 8 and 13, which was never heard because of his death prior to its return date is no authority for reconsideration of his decision by me. I cannot say that Judge Dawson would have vacated his decision and reinstated these counts; the signing of the order to show cause was an indifferent judicial act of no determinative significance. It decided nothing—not even whether the Court would reconsider. In fact, examination of the reasons urged by plaintiff for reconsideration discloses nothing which in our opinion might have caused Judge Dawson to change his decision. J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 the authority relied on by plaintiff in support of his order to show cause does not validate these counts. Besides since Judge Dawson's death plaintiff has done nothing to bring the order to show cause on for hearing until defendant made the instant motion to dismiss the remaining counts. Now eighteen months later, plaintiff seeks reconsideration not only of Counts 8 and 13 but of the remaining ones, as to which he had never sought reconsideration. Obviously, plaintiff thought as little of his chances of succeeding as we do. This motion is denied,—both procedurally and on the merits.

We turn now to defendant's motion and to the two questions which are determinative of its outcome,—whether the matter complained of was published in connection with a judicial proceeding and if so whether it fairly and accurately reported the proceeding. The first question can be resolved on the documents filed in connection with this motion; the second requires a comparison of the content of the judicial proceeding with the matter reported.

It is urged by defendant that the determination of both questions may be made by the Court as a matter of law because the question of whether the privilege attached is a question of law. Plaintiff urges that neither may be determined by the Court since underlying both are disputed issues of fact which require a trial.

The defamatory statements charged in this suit arise out of the reporting of commencement of two derivative stockholders suits on behalf of Alleghany Corporation against Phillips and others: one, the *Freeman* suit in the New York State Court and the other, the *Murchison* suit in this Court.

Specifically, the complaint alleges in the remaining counts before us, as follows:

Count 6 charges that plaintiff was slandered on September 7, 1960, when defendant's "agent" Holland (his attorney) telephoned the Wall Street Journal to report to it the institution of the *Freeman* suit, and that plaintiff was libeled by that paper's republication of the report on September 8, 1960. In this count plaintiff sets forth that part of the report which he charges was defamatory.

Count 7 charges that plaintiff was similarly slandered when Holland telephoned this information to the Herald Tribune on the same day, and that plaintiff was libeled when that paper republished this report on September 8, 1960. Again, plaintiff sets out that part of the report which he claims defamed him.

Count 9 charges that plaintiff was libeled by defendant when Hill & Knowlton, a firm of press agents acting on defendant's behalf, issued from their New York office a press release to newspapers and wire services in the State of New York and elsewhere in the United States, and to individuals in the State of New York and elsewhere in the United States, through the use of the mails and otherwise, which was headed "For: Murchison Brothers *For IMMEDIATE RELEASE: THURSDAY, SEPTEMBER 8, 1960*"; that by issuing said press release through Hill & Knowlton, Inc., defendant Murchison caused the substance of it to be published by newspapers,

magazines, and wire services throughout the United States, thereby causing widespread and extensive circulation of the aforesaid false, malicious, and defamatory statements. This count goes on to recite the dismissal on the merits of the charges against plaintiff which had been so publicized in the press release, and the failure of defendants to cause a press release to be issued publicizing this decision of this Court, or communicating the decision of this Court to those newspapers which had reprinted defendants' press release.

The Tenth Count charges that plaintiff was defamed as a result of the republication of the press release of September 8, 1960 in the New York Times and in the New York World Telegram and Sun on September 9, 1960.

The Eleventh Count charges a similar defamation as a result of the republication of the press release in the Minneapolis Morning Tribune of September 9, 1960, which statements are alleged to have been telephoned to the newspaper by defendant or his agents in New York City to that paper's Business Editor in Minneapolis.

The Twelfth Count charges that the mailing on September 13, 1960, by defendant of copies of the Murchison complaint to his fellow directors throughout the United States and Canada constituted a libel and alleges as well that some of the allegations of the complaint itself were libelous.

No question is presented as to the defamatory nature of the statements pleaded in the complaint.[2]

In support of his position that there were judicial proceedings pending at the time of all publications complained of and that there is no question as to when these judicial proceedings began, defendant has submitted various affidavits based on personal knowledge. With respect to the *Freeman* suit against Phillips, Kirby and Ireland in the State Court there is an affidavit of Holland, attorney for the stockholder Freeman, which unequivocally states that he, Holland, personally served the *Freeman* summons and complaint upon Ireland and Alleghany on September 7, 1960, and that subsequent to this service he, Holland, telephoned the Wall Street Journal and New York Herald Tribune to inform them of the institution of this suit. The summons and complaint are attached as an exhibit and are dated and verified respectively September 7, 1960. There is no question that the date of the newspaper publications was September 8, 1960. Although no affidavit of service of the summons and complaint on Ireland and Alleghany has been submitted on this motion, the sworn statement of Holland, a member of the bar of this Court, and counsel for Freeman at the time, is supported by the report in the Wall Street Journal on September 8, 1960, that "Mr. Ireland confirmed he had been served with the suit, which is being brought in New York State Supreme Court." For this statement to have appeared in the paper, which was on public sale on the morning of September 8, 1960, it would have had to be printed at the latest the night of September 7, 1960, the day on which Holland says he served Ireland. The affidavit of Mr. Carter, attorney for defendant on this motion, adopts and reaffirms the statements in Holland's affidavit.

With respect to the Murchison suit filed in this Court against Kirby, Phillips and others, there is the affidavit of Huschle, an attorney in the office of the

---

2. "In short, and bluntly put, it is charged that for a price, Phillips sold out to Kirby and betrayed the interests of those he purported to represent, in advocating the acceptance of a separate settlement with Kirby for $1,100,000 when he knew the latter's liability in the lawsuits had been evaluated at $35,000,000, and that the sum of $1,100,000 was considerably less than Kirby would have had to pay in settlement except for the alleged corrupt conduct; that the conspiracy encompassed the lifting of the injunction of this Court, as well as the entry of an order of dismissal as to Kirby, which were achieved by the concealment of his alleged duplicitous conduct from both Courts." Murchison v. Kirby, D.C., 27 F.R.D. 14, 17 (1961).

attorneys for Murchison in that suit (and present counsel) to the effect that he filed the complaint in this Court on September 8, 1960 sometime before 4:30 P.M. and that he reported the completion of such filing to a member of the firm. The records of this Court established that this complaint was filed on that day. There is a further affidavit of Cheney, Vice-President of Hill & Knowlton, press agents for Murchison, stating that on September 8, 1960 he read the Murchison complaint and discussed its allegations with counsel for Murchison and prepared a press release to announce the commencement of the action, but that he was instructed not to and did not distribute the release until he had received word from counsel of the filing of the complaint. Mr. Carter's affidavit adopts and reaffirms these statements.

Opposed to these we have two affidavits of plaintiff and a Rule 9(g) statement reciting numerous facts as to which he says there is a genuine issue. We will consider only those that are relevant to this motion:

1. Whether or not the publications complained of in the 6th, 7th, 9th, 10th and 11th Counts were a "fair and true report of the judicial proceeding they purported to report."

2. Whether the statements in the affidavit of Holland as to the times of service of his complaint in the Freeman action and of his telephoned communications to the Wall Street Journal and the Herald Tribune are true.

3. Whether the statement in the affidavit of Cheney as to the time of his receipt of the Murchison complaint, his discussions with Murchison's attorneys, the preparation of the press release and its delivery to others is true.

4. Whether the statement in the affidavit of Huschle as to the time of the filing of the Murchison complaint and his notification to his office is true.

5. Whether the statements in the affidavit of Mr. Carter—referring to the above three affidavits are true.

Plaintiff's affidavits to support these issues insofar as relevant are to the effect that he denies the allegations in all the affidavits "as to the times of service of the complaints referred to, of the times of publication of the complaints referred to, and of the times of the discussions or reports therein referred to"; and that he "challenges their credibility with respect to their material allegations."

Further averments as to the time of the "filing" of the *Freeman* action in the State Court, and of the service upon him in *both* actions and of his opportunity to answer the complaints are totally immaterial to the question before us and do not challenge the facts relied on by defendant to support his motion.

It cannot be disputed (and plaintiff conceded this) that an action of the nature here involved is commenced in the New York State court by the service of the summons upon any one defendant, and in the Federal court "[a] civil action is commenced by filing a complaint with the court." (Rule 3 F.R.Civ.P.). The filing of the complaint in the *Freeman* suit in the State Court, and the service of a defendant with process in the Murchison suit in the Federal court is not required in the establishment of the pendency of a judicial proceeding. Once the pendency of the judicial proceedings has been established the privilege attaches irrespective of whether the proceedings were public knowledge or known to plaintiff. (Campbell v. New York Evening Post, 245 N.Y. 320, 157 N.E. 153, 52 A.L.R. 1432).

Plaintiff's denial is a group denial of the material allegations of the time of service and the telephone calls, lumped together so vaguely as to make it impossible to determine exactly what plaintiff is contesting. He denies "times of service of the complaints", which could include service of the Murchison complaint and which is not relevant; he denies "times of publication" which could include the telephone calls, as well as the press release, the discussions with

counsel and the newspaper reports—some of which are incontestable. Although plaintiff has had more than five years in which to inform himself of the true facts relating to the time of service, the telephone calls, the discussions, etc. he has stated no facts to contradict counsel's sworn statements and the supporting exhibits.

Plaintiff seeks to create an issue of fact out of nothing more than his bald statement that there is an issue of fact as to the truthfulness or falsity of counsel's statements. All he discloses by this challenge to the credibility of counsel's statements is a baseless hope that by cross examination he will be able to establish that both former and present counsel for Murchison are not truthful. He has shown no facts which would form the basis for reaching the conclusion that counsel did not serve the summons and complaint in the *Freeman* suit when he swears he did. Certainly, this Court is not to conclude, without substantial basis for doing so that two members of its bar of experience and good reputation have perjured themselves and deceived the Court in order to gain some procedural advantage over their adversary. No genuine issue of the credibility of these witnesses requiring a trial has been raised; summary judgment will lie in such case (Topp-Cola Co. v. Coca-Cola Co., D.C., 185 F.Supp. 700; Orvis v. Brickman, D.C., 95 F.Supp. 605, aff'd. 90 U.S.App.D.C. 266, 196 F.2d 762; Scolnick v. Lefkowitz, 329 F.2d 716, 2d Cir. 1964). To hold otherwise would mean that any time issue has been joined in an action, summary judgment will not lie. Rule 56(e) requires not a reassertion by the adverse party of his allegations or denials but a response by affidavits setting forth specific facts showing the issue which must be tried.

We find that there was a judicial proceeding pending at the time of the publications in the Wall Street Journal and the Herald Tribune, the libel alleged in Counts 6 and 7, and at the time that Holland telephoned these papers—the slander charged in Counts 6 and 7. It follows that we find that the republication of the press release in the World Telegram, the New York Times and the Minneapolis Morning Tribune of September 9, 1960 reporting the institution of the Murchison suit in this Court was made while there was a judicial proceeding pending, in view of the fact that complaint had been filed in this Court on September 8, 1960.

This brings us to Count 9, which as we have seen charges libel through the issuance and publication of the press release by defendant's press agent reporting the institution of the Murchison suit to the newspapers and their publication of it on September 9, 1960. The issuance of the press release to the newspapers is sworn by Cheney, the press agent, to have been made on September 8, 1960 after he had been advised by counsel for Murchison that the complaint had been filed. Again, plaintiff has submitted no facts showing that there is a question as to when Cheney released the press release to the papers, and in fact under his very vague denial he has not ever concretely denied that the press release was in fact released following the institution of suit. Using the Cheney affidavit as a springboard, plaintiff in a belated attempt to immunize this Count 9 from the protection of a judicial proceeding, attempts to argue that he was libeled when counsel for Murchison prior to the filing of the complaint showed Cheney the complaint in order that he might prepare a press release. There is no question that Cheney did see the complaint prior to its filing—he has so sworn— as there is no question that plaintiff has nowhere charged that this disclosure by defendant to his press agent constituted the publication complained of by him. It is unnecessary for this Court to determine whether publication by a party to a press agent under contract to the party for the purpose of having him prepare a press release of a contemplated judicial proceeding is protected or actionable. Plaintiff has repeatedly described his count as charging "publication of defamatory matter by press re-

lease throughout the United States" and cites Munafo v. Helfand, D.C., 140 F. Supp. 234, 237 for the proposition that "delivery of the press release to the newspapermen was publication in and of itself," making it quite clear that this is the publication complained of and not the prior one by counsel to Cheney.

We find that publication of the press release by Cheney to the newspapers was made when there was a judicial proceeding pending and that it was therefore privileged.

■ After four complaints and six years there would be no reason to permit the filing of an amended count charging libel by publication to defendant's agent in view of the fact that such a claim is barred by the one-year statute of limitations, (CPLR 215 (C.P.A. § 51(3)) that it may not relate back to the libel now pleaded (Hartmann v. Time, Inc., 3 Cir., 166 F.2d 127, 1 A.L.R.2d 370) and that the damage, if any, suffered by plaintiff arose not from the publication by defendant to its press agent, but rather from the publication by the defendant's agent to the newspapers.

■ The second question to be determined with reference to all the remaining counts is whether the publications— the telephone call, the press release and the newspaper reports—fairly and truly reported the judicial proceedings we have found pending. The resolution of this is essential not because plaintiff has charged that they were not fair and true reports, for he has not done so, but because this is the other statutory requirement, which must be met before the privilege attaches. The ultimate question of application of the statute to the publication is of course one of law for the Court, but the primary one of fairness and truth may or may not present a question of fact which might require a hearing before the statute may be applied.

■ Whether such a factual issue exists can be determined only from an examination of the evidence before the Court—that is, the complaints which form the basis of the judicial proceedings and the language employed to report them. Obviously if the reports were verbatim reprints of the complaints, the matter would end there, but they are not and it is necessary therefore to compare the reports with the complaints in order to determine whether there is an issue as to their fairness and truthfulness. The complaints, the press release and the newspaper reports are before the Court—they are undisputed. No claim is made that the telephone calls made by Holland, which form the basis for plaintiff's claim of slander in Count 6, published matter other than that which appeared in the newspaper reports, which are undisputed, so that as to this charge of slander no issue is presented. That the Court may make the determination is established. Gregory v. Daily Gazette Co., 22 A.D.2d 846, 254 N.Y.S.2d 66.

> "Where as here and as conceded by the parties, all of the essential facts appear in the pleadings and the only question is a question of law as to whether the publication is a fair report of court documents attached to the complaint, judgment on the pleadings is proper." Schachter v. News Syndicate Co. Inc., 270 App.Div. 378, 380, 59 N.Y.S.2d 693, 694 (1st Dept. 1946.)

In George v. Time Inc., 259 App.Div. 324, 19 N.Y.S.2d 385, 386, App.Div. 1st Dept. 1940, it was held that " * * * on the undisputed facts in this record as to the content of the Circuit Court's opinion (the judicial proceeding), and the language used by defendant in reporting it, the issue as to whether the article was a fair and true report was an issue of law for the court."

This is in accord with Seelman, Libel and Slander in the State of New York (rev. ed. 1964) at p. 278 where the law of New York is tersely stated that:

> "Where the question of fair report arises solely from the publication of the contents of legal documents; or upon undisputed testimony of the court occurrence, it is for the court to decide."

The question of malice, a true question of fact, does not defeat the privilege; its resolution therefore even if pleaded is not necessary to an application of the privilege (Kelley v. Hearst Corp., 2 A.D.2d 480, 157 N.Y.S.2d 498; Farrell v. New York Evening Post, 167 Misc. 412, 3 N.Y.S.2d 1018 (Sup.Ct.N.Y. Co.1938)).

The entire reports must be read, but the following excerpts illustrate their overall nature.

The Wall Street Journal report (Exhibit "2") pleaded in the 6th Count has the lead caption:

"TWO MINORITY HOLDERS SUE, KIRBY, OTHER TOP OFFICERS OF ALLEGHANY

Suit Charges He gave R. Phillips Seat on I.D.S. Board. Got Favorable Settlement of '55 Suit

There follows a synopsis of what the *Freeman* suit charges and who are named as defendants. It goes on to quote both defendants—Ireland that the charges were ridiculous and a statement to the effect that he had been served and by Phillips that he had not been served and that he was not going to be intimidated or coerced from performing his duty in spite of the charges made against him; the report also quotes Murchison on charges of wrongdoing made against him by stockholders of I.D.S.

The report in the Herald Tribune ((Exhibit "3"), the 7th Count) bears the caption

"ALLEGHANY FACED BY NEW SUIT INTEREST CONFLICT CHARGE LEVELED."

and describes the suit as a battle between millionaires (Kirby and Murchison) for control of Alleghany; then quoting from the complaint it says that the suit charged that Kirby entered into a "secret agreement and conspiracy" with Phillips to procure favorable settlement of another suit in return for a promise to Phillips of "certain perquisites", among which were that Phillips would be named a director of I.D.S. with a salary and expense account. Under a subheading

"Payment Held Inadequate" Phillips is quoted as saying that he had requested the removal of the Murchisons for wrongdoing, and that he would not be intimidated or coerced from performing his duties to the I.D.S. stockholders.

The press release ((Exhibit "5"), Count 9), bears the heading

"FOR: MURCHISON BROTHERS FOR IMMEDIATE RELEASE: THURSDAY, SEPTEMBER 8, 1960"

and begins by stating that Murchison and others had charged defendants and Phillips with conspiracy to defraud the courts and Alleghany; it then continues with a summary of the complaint "filed in the United States Southern District Court", quoting from it that it alleges that Phillips was to receive "a position of prominence as a director or officer of I.D.S., ALLEGHANY or one of its affiliates,", adding in parentheses and not quoting that ("Phillips is now a director of I.D.S."). It also quotes from the complaint that he would be a "salaried consultant to Alleghany or one of its affiliates" and not quoting, in parentheses ("Phillips is now on the payroll of I.D.S. as a consultant at $2,500. monthly.").

The report in the World Telegram ((Exhibit "6"), Count 10) under the heading "MURCHISONS JOIN FIGHT FOR ALLEGHANY CONTROL" reports on the contest between the Murchisons and Kirby for control of Alleghany and describes very briefly the suits filed in the State and the Federal Courts saying that they charged that defendants Kirby, Ireland and Phillips "conspired to put over on the federal and state courts a fraudulent settlement" and that Kirby "made a secret agreement to reward Phillips with a directorship and a job".

The report in the New York Times ((Exhibit "7"), Count 10) under the caption

TWO ADDITIONAL LAWSUITS FILED AGAINST OFFICIALS OF ALLEGHANY

is even briefer; it summarizes the two complaints as charging "a secret agree-

ment and conspiracy" among the three defendants and a "fraud on the courts" in a "secret agreement between Phillips and Kirby."

The report of the Minneapolis Morning Tribune ((Exhibit "8"), Count 11) carries the by-line

MURCHISONS CHARGE CONSPIRACY IN ALLEGHANY CORP. SETTLEMENT

and among paraphrases of the allegations of the complaint makes the following statements of plaintiff describing him as "a leader in the suits against the management of Alleghany" and since the settlement "active in Alleghany affairs," "a director of IDS * * * and chairman of the IDS law and finance committee" and "a leader in the recent shakeup of the management of IDS". It further quotes from the complaint that "Phillips in collaboration with Ireland was to use the position created for him in Alleghany or I.D.S. to harass and discourage any opposition to Kirby within the management or among the stockholders of I.D.S.," and that "Phillips now is receiving $2,500. a month from I.D.S. for services as a consultant."

A comparison or paragraphs of the complaints with the reports leaves no doubt that far from imputing greater turpitude to plaintiff than do the judicial proceedings, they are very restrained in accurately summarizing the content of these proceedings. The emphasis is on Kirby and Murchison, rather than on Phillips, who is made to appear as a weapon in the hands of Kirby in his battle against Murchison, which had for long occupied the attention of the press and the public. The language travels very closely on the language of the complaints and where it does not there are no words used which might be susceptible of charging plaintiff with greater wrongdoing than do the complaints.

Plaintiff really does not dispute the fairness and truthfulness of the language used, but rather relies on legal arguments to destroy privilege. Thus, he says that the language of the press release is not privileged because it contains factual statements which are not reported as allegations of the complaints, and he points to the language found in parentheses in the press release.

There are two answers to this argument—one is that although not reported as a charge in the complaint, these two statements were in fact allegations of the complaints, and the second is, that even if they were not, if they were true and not in themselves libelous they would not destroy the privilege. That a statement of fact is interspersed among a report of judicial proceedings does not deprive the report of the protection of the statute so long as the statement does not affect its truthfulness or fairness (Briarcliff L. Hotel v. Citizen-Sentinel Publishers, 260 N.Y. 106, 183 N.E. 193). So too, the headings or lead lines of the reports themselves are protected if they are fair and true headnotes of the statements published. Here, the headings are no more than an index of what appears in the context below; and only one refers to plaintiff! The Wall Street Journal states that Kirby is charged with having given plaintiff a seat on the I.D.S. Board and with having obtained a favorable settlement of the stockholders' suit. Nothing could be a more accurate or fairer summary of what was charged in the complaints.

Plaintiff's other argument is that the privilege is defeasible because defendant failed to publish his subsequent vindication, and that the report therefore was not full, fair or impartial.

The report here was co-extensive with the judicial proceeding—only the complaints were then in existence and that is what was reported. It was as complete as could be and that is when the privilege attached, not years later; it was not destroyed because the charges ultimately were not sustained. Dismissal of the charges did not render the charges in the complaint non-existent as a record in a judicial proceeding. George v. Time, Inc., supra; Campbell v. New York Evening Post, supra. There is no

principle of law which so eradicates the privilege which has attached because of subsequent events.

Plaintiff's next argument is undeserving of much comment. If the report is privileged because made in connection with a judicial proceeding, it matters not what its source is. The report determines the privilege, not its source, so that it is immaterial whether the newspapers (who are not the defendants here) obtained their information directly from the complaints. Murchison, the defendant, and his agent obviously did obtain the information from that source.

Plaintiff finally urges that the privilege does not apply to the Murchison action because the publication was by Murchison a party to the complaint. But, the statute immunizes "any person" including parties to the litigation (Lewis v. Chemical Foundation, 262 N.Y. 489, 188 N.E. 33; Robinson v. Battle, 148 App.Div. 230, 133 N.Y.S. 57; Oglesby v. Cranwell, 250 A.D. 720, 293 N.Y.S. 67).

Reaching at long last Count 12, it is clear that the mailing of the copies of the complaint by Murchison to his fellow directors was on September 13, 1960 long after its filing was completely privileged as a publication of a judicial proceeding. No question of fairness or truth is presented here since the publication was of the complaint itself. Plaintiff has again argued that the Civil Rights Law of New York does not apply to the out of state publications alleged in the 11th and 12th Counts. This was an argument raised before Judge Dawson in support of plaintiff's prior motion to strike the defense of privilege under New York law, and rejected by Judge Dawson on defendant's allegation that the judicial proceedings were pending here, and that the publications emanated from New York, where plaintiff was resident and where damage, if any, was inflicted. This is where the tort was committed, but even if it were not, the New York law would still apply as the place having the most significant rela-

tionship with the occurrence (Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1; King v. Hildebrandt, 2 Cir., 331 F.2d 476; Restatement of Conflicts, 2d Sec. 379(e)).

The motion to dismiss Counts 6, 7, 9, 10, 11 and 12 and to enter judgment for defendant is granted upon the complete defense at law that the alleged defamations were absolutely privileged. The Clerk is directed to enter judgment of dismissal of these remaining counts with costs and with prejudice;

So ordered.