**Richard E. WENZ, Plaintiff,**

v.

**Arthur P. BECKER and Time, Inc., Defendants.**

**No. 96 Civ. 2161 (SWK).**

United States District Court,
S.D. New York.

Dec. 17, 1996.

Schopf & Weiss by Kenneth E. Kraus, Veronica Gomez, Chicago, IL, Sullivan & Gallion by Charles Sullivan, New York City, for Plaintiff.

Seyfarth, Shaw, Fairweather & Geraldson by Nathaniel H. Akerman, New York City, Miller & Martin by Harry S. Mattice, Jr., Chattanooga, TN, for Defendant Arthur P. Becker.

David B. Wolf, New York City, for Defendant Time, Inc.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this defamation action, defendant Arthur P. Becker ("Becker") moves for summary judgement pursuant to Federal Rule of Civil Procedure 56 on the ground that his allegedly defamatory statement is protected as a fair and true report on a judicial proceeding under New York Civil Rights Law Section 74. For the reasons set forth below, Becker's motion is denied.

### BACKGROUND [1]

From February 14, 1992 through September 26, 1994, plaintiff Richard E. Wenz ("Wenz") was employed as the chief executive officer of ProGroup, Inc. ("ProGroup"), a Tennessee corporation. During the time that Wenz was the chief executive officer of ProGroup, Becker was the chairman of the board of directors of ProGroup.

Upon termination of his employment on September 26, 1994, Wenz entered into a separation agreement and general release (the "Separation Agreement") with ProGroup. Pursuant to the Separation Agreement, Wenz relinquished certain rights under his employment agreement and in return, ProGroup agreed to pay him certain funds in the future. Subsequently, however, Pro-

---

1. Except where otherwise indicated, the following statement of facts is derived from the parties' statements of undisputed facts, submitted pursuant to Local Rule 3(g).

Group failed to make payments to Wenz as required by the terms of the Separation Agreement.

As a result of ProGroup's non-payment, on November 21, 1994, Wenz filed a complaint against ProGroup in Tennessee state court in an action entitled *Richard E. Wenz v. Pro-Group, Inc.,* No. 94–75158 (the "Tennessee Lawsuit") seeking damages pursuant to the terms of the Separation Agreement or, alternatively, his employment agreement. On May 19, 1995, ProGroup filed its answer denying liability to Wenz under either agreement. In addition, ProGroup asserted four affirmative defenses to Wenz's claims and counterclaimed for fraud, breach of fiduciary duty and breach of contract. Specifically, ProGroup claimed that when it entered into the Separation Agreement, it was unaware that it would have been justified in terminating Wenz "for cause" since Wenz had in fact perpetrated a fraud upon the company during his employment. ProGroup's Second Affirmative Defense alleges that:

> ProGroup was entitled to terminate Richard E. Wenz ("Wenz") for cause ... because Wenz had engaged in fraud, malfeasance, misfeasance, and non-feasance in the performance of his duties, engaged in acts or omissions not in good faith and which involved intentional misconduct and knowing violation of civil and criminal law which had not been disclosed to, and was concealed from, ProGroup's Board of Directors prior to it entering the Separation Agreement of September 26, 1994.

ProGroup's Answer and Counterclaims, annexed to the Affidavit of Harry S. Mattice, Jr., sworn to June 18, 1996, as Exh. "B," at ¶ 24.

On June 12, 1995, *Fortune* magazine published an article about ProGroup entitled "How Arnie Hit Into The Rough With Golf Clubs" (the "Article").[2] In general, the Article reported on the financial history and control of ProGroup. The Article also specifically referred to the Tennessee Lawsuit as follows:

> Last September, Becker asked Wenz to resign, and the two drew up a separation

agreement that would pay Wenz his salary until 1988. But after going through Pro-Group's books, Becker says he became convinced that Wenz could be terminated for cause and decided not to pay him anything. In late November, Wenz sued Pro-Group for breaching the separation agreement and demanded his salary plus over $100,000 for a lost deposit on a house, unreimbursed business expenses, and accrued vacation time. Wenz also demanded $75,000 that he said in court papers he had paid to settle a claim of alleged sexual harassment, which he says he did with the expectation of continuing to work for Pro-Group.

*Fortune* Magazine Article, annexed to the Complaint as Exh. "A."

In the action presently before this Court, Wenz claims that Becker defamed Wenz by stating that "after going through ProGroup's books, ... he became convinced that Wenz could be terminated for cause and decided not to pay him anything." *Id.; see also* Complaint at ¶¶ 10–11. According to Wenz, Becker gave this statement to *Fortune* magazine during one or more interviews in March 1995, after the complaint had been filed but a few months before ProGroup filed its answer and counterclaims. About this same time, *Fortune* magazine also contacted Wenz and asked for his comments on the forthcoming article on ProGroup. Wenz claims that the *Fortune* representative neither asked him about his departure from ProGroup nor informed him that Becker had made any statements concerning his termination. In addition, Wenz claims that as a result of the Article, he received more than one dozen negative phone calls or comments from individuals who were concerned about the seriousness of the allegations against him.

## DISCUSSION

### I. Standard of Law

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is ap-

---

**2.** The "Arnie" referred to in the title of the Article is Arnold Palmer, a well known golf profes-

sional and a member of ProGroup's board of directors.

propriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing to an absence of evidence in support of the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The nonmoving party must then come forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

The Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. New York,* 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the Court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. United States Fire Ins. Co.,* 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.,* but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion, *see, e.g., Knight v. United States Fire Ins. Co.,* 804 F.2d at 11–12. In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

## II. Section 74 of the New York Civil Rights Law

Section 74 of the New York Civil Rights Law provides that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding . . . ." N.Y.Civ.Rights Law § 74. The public policy underlying this statutory privilege is the promotion of truth on the part of litigants who may state their positions without fear of being sued for libel, *Williams v. Williams,* 23 N.Y.2d 592, 599–600, 298 N.Y.S.2d 473, 480, 246 N.E.2d 333, 337–338 (1969), and the interest in having judicial proceedings public for the proper administration of justice, *Stolow v. Hearst Corp.,* 201 Misc. 504, 507, 105 N.Y.S.2d 284 (Sup.Ct.N.Y. 1951). Significantly, the privilege is not intended to protect statements which, at some subsequent time, may become the topic of a lawsuit. Rather, the privilege applies only where (1) the allegedly defamatory statement is connected to a judicial proceeding; and (2) the statement fairly and accurately reports the judicial proceeding. *Phillips v. Murchison,* 252 F.Supp. 513, 516 (S.D.N.Y.1966), *rev'd on other grounds,* 383 F.2d 370 (2d Cir.1967), *cert. denied,* 390 U.S. 958, 88 S.Ct. 1050, 19 L.Ed.2d 1154 (1968).

## A. Report on a Judicial Proceeding

■ Allegedly defamatory statements are protected by Section 74 only where the statements report on a judicial proceeding. *Williams v. Williams*, 23 N.Y.2d at 599–600, 298 N.Y.S.2d 473, 246 N.E.2d 333. If the context in which the statements are made make it "impossible for the ordinary viewer to determine whether defendant was reporting on a trial or simply from interviews and independent research, the absolute statutory privilege does not attach." *Corporate Training Unlimited, Inc. v. Nat'l Broadcasting Co.*, 868 F.Supp. 501, 509 (E.D.N.Y.1994).

■ Wenz asserts that Becker's statement that Wenz could have been fired for cause was not a report on a judicial proceeding at the time it was made to *Fortune* magazine because there was not yet a judicial proceeding on which to report. In March 1995, when Becker allegedly made the statement to *Fortune* magazine during an interview, ProGroup had not yet filed its answer and counterclaims in which the assertion was contained. In other words, Wenz claims that the actual filing of ProGroup's answer and counterclaims was a necessary precursor to Becker's invocation of the Section 74 privilege, since the statement at issue relates to ProGroup's defense. This position is without merit. By its own terms, Section 74 applies to a report of "any judicial proceeding." N.Y.Civ.Rights Law § 74. A judicial action is commenced by the filing of a complaint with the Court or by the service of a summons upon a defendant. *Phillips v. Murchison*, 252 F.Supp. at 519; *see also State v. Mitchell*, 593 S.W.2d 280, 287 (Sup.Ct.Tenn.) (filing of a complaint constitutes initiation of a judicial procedure), *cert. denied*, 449 U.S. 845, 101 S.Ct. 128, 66 L.Ed.2d 53 (1980). Moreover, once the pendency of the judicial proceeding has been established, the privilege pursuant to Section 74 attaches and applies to any pleading in the course of the proceeding. *Phillips v. Murchison*, 252 F.Supp. at 519; *Branca v. Mayesh*, 101 A.D.2d 872, 873, 476 N.Y.S.2d 187 (2d Dep't), *aff'd*, 63 N.Y.2d 994, 483 N.Y.S.2d 1011, 473 N.E.2d 261 (1984). Thus, the Tennessee Lawsuit, which was commenced in November 1994, was already pending when Becker made the allegedly defamatory statement to *Fortune* in March 1995. That ProGroup had not yet performed the ministerial act of filing its answer and counterclaims at the time the statement was made is irrelevant to the applicability of Section 74 to Becker's statement if it in fact reported on ProGroup's defense in the Tennessee lawsuit. *See, e.g., McNally v. Yarnall*, 764 F.Supp. 853 (S.D.N.Y.1991) (statement to press relating to a potential defense which might be asserted at trial was a "report on a judicial proceeding").

■ Wenz also asserts that Becker's statement about terminating Wenz for cause was not a report on the Tennessee Lawsuit because the statement was not clearly tied to the lawsuit. According to Wenz, Becker did not report on the nature or status of the pending litigation. Rather, he simply issued an independent attack on Wenz's integrity. In support of this argument, Wenz relies on the following facts: (1) the focus of the Article was not the Tennessee Lawsuit, but rather the difficulties ProGroup has experienced recently, as relayed by Becker; (2) Becker's statement precedes the sentences describing Wenz's allegations against ProGroup; and (3) Becker's statement is not qualified by clear language, such as "affirmative defense," indicating that the statement refers to a judicial proceeding.

These allegations, taken together, raise a genuine issue of fact as to whether Becker's statement was in fact a report on a judicial proceeding. First, although the only statement by Becker alleged to be defamatory is that he became convinced that ProGroup could have terminated Wenz for cause, the context of the entire Article is relevant in determining whether Becker was reporting on the Tennessee Lawsuit when he made that statement. Second, the fact that Becker's sentence precedes the description of Wenz's allegations against ProGroup raises a factual question as to whether Becker was responding to interview questions about the Tennessee Lawsuit or, on the other hand, issuing unsolicited and independent com-

ments on the circumstances surrounding Wenz's termination.[3]

Finally, the absence of legal terminology labeling Becker's statement an "affirmative defense" though not determinative, is a factual issue whose importance is subject to differing opinions. Although such language is not required under Section 74, the significance of its absence is a matter to be considered by the factfinder.[4]

**B. Fair and True Report**

■ For a report to be "fair and true" within the meaning of Section 74, "it is enough that the substance of the article be substantially accurate." *Corporate Training Unlimited, Inc. v. Nat'l Broadcasting Co.,* 868 F.Supp. at 508 (quoting *Holy Spirit Assoc. for Unification of World Christianity v. New York Times, Co.,* 49 N.Y.2d 63, 67, 424 N.Y.S.2d 165, 399 N.E.2d 1185 (1979)). The standard is whether the published account of the proceeding would have a different effect on the reader's mind than the actual truth if published. *Daniel Goldreyer, Ltd. v. Van De Wetering,* 217 A.D.2d 434, 436, 630 N.Y.S.2d 18 (1st Dep't 1995). Wenz asserts that even if Becker's statement constitutes a report on the Tennessee Lawsuit, Becker's statement is not privileged pursuant to Section 74 because it is neither fair nor true. According to Wenz, Becker's statement suggests more serious wrongful conduct than that alleged in ProGroup's answer and counterclaims.

A comparison of ProGroup's Second Affirmative Defense and Becker's statement to *Fortune* reveals an undisputable similarity between the two allegations. Nonetheless, Wenz contends that by omitting certain facts

in his interview with *Fortune* which were included in ProGroup's answer and counterclaims, Becker created a false impression as to the nature and severity of ProGroup's allegations against Wenz. Specifically, Wenz claims that Becker's reference to "ProGroup's books" created the false impression that Wenz altered ProGroup's financial statements. According to Wenz, Becker intentionally failed to explain that ProGroup believed it was entitled to fire him because of his alleged submission of improper personal expenses and alleged failure to disclose certain anticipated losses, not because of any embezzlement or alteration of ProGroup's financial statements. This allegation raises at least two material issues of fact: (1) whether Becker reported these details of ProGroup's defense to *Fortune* and they were simply not included in the Article; and (2) if in fact Becker failed to disclose these facts to *Fortune,* whether the omission renders Becker's statement an unfair or untrue report of ProGroup's defense.[5] Thus, summary judgment is inappropriate at this time.

**CONCLUSION**

For the reasons set forth above, Becker's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is denied.

SO ORDERED.

---

3. As such, this case is distinguishable from *McNally v. Yarnall,* 764 F.Supp. at 856, in which the court held that statements made by one party's attorney about a potential defense in a pending action were protected by Section 74. In *McNally,* however, the court emphasized that the article in which the statements were made was clearly about the lawsuit and that the reporter had contacted the attorney in order to obtain information about the lawsuit. *Id.*

4. It is entirely possible, however, that Becker did use the term "affirmative defense" in his interview with *Fortune* magazine and that the author of the Article chose not to include this language in the Article.

5. Notably, the factual issue presented here is not whether the Article in its entirety implies more serious misconduct on the part of Wenz than that alleged in ProGroup's Second Affirmative Defense, since Becker cannot be held responsible for the structure and content of the Article. Similarly, contrary to Wenz's assertions, the issue of whether the phrase "terminated for cause" may be defamatory is not presently before the Court. Rather, the issue presented is whether Becker's statement is a fair and true report on the Tennessee Lawsuit.