OPINION OF THE COURT
Jasen, J.
In this libel action, plaintiff Holy Spirit Association for the Unification of World Christianity (the Unification Church) seeks to recover 45 million dollars in damages from defendant New York Times Company due to the publication by defendant of three articles referring to intelligence documents released by the United States House of Representatives Subcommittee on International Organizations concerning its investigation of Korean-American affairs.
Defendant moved for summary judgment on the ground that the allegedly libelous articles are fair and true reports of legislative or other official proceedings and, as such, are privileged finder section 74 of the Civil Rights Law. Special Term granted the motion and the Appellate Division, one Justice dissenting, affirmed. There should be an affirmance.
At the outset, it should be stressed that plaintiff is not now contending that the articles are "untrue” in the sense that they contain misquoted material. Rather, the gravamen of plaintiff’s allegations is that these articles, by failing to characterize properly the nature of the intelligence reports, dis *66 torted the import of these documents to the detriment of plaintiff.*
The intelligence documents released by the subcommittee were written by unidentified authors and contained information related to them by an unidentified source. Although the earliest document, written in 1963, noted that it embodied unevaluated information, the others contained no such notation, although it appears that the same individual was used as the common source for all the intelligence reports. The unverified information claimed to be offensive to plaintiff indicated that the Unification Church was organized for use as a political tool by one Kim Chong-Pil while he acted as director of the Korean Central Intelligence Agency (K.C.I.A.).
The newspaper article upon which plaintiffs second cause of action is predicated concerned the guilty plea entered by former Representative Richard Hanna to charges related to the widely publicized South Korean influence-buying scandal. This article, published on March 19, 1978, contained the following language: "Increasingly, it appears that despite a number of inquiries under way in courtrooms and on Capitol Hill, investigators may have to settle for confirming old suspicions about the Koreans rather than breaking new ground. Last week, for example, a subcommittee of the House International Relations Committee released intelligence reports which, while interesting simply stated as fact what many Americans already believe — that the Unification Church of the Rev. Sun Myung Moon was a Korean Government operation.” Plaintiff challenges the fairness of characterizing these unverified reports as one of "fact”, and claims that the language was calculated to "hold the plaintiff up to public scorn, hatred and ridicule”.
After the release of this article and a prior article published by defendant which recounted the substance of the intelligence reports linking plaintiff to Korean influences, members of the Unification Church picketed the offices of defendant. This demonstration gave rise to the article published by defendant on March 21, 1978 — the article upon which plaintiff predicates its third cause of action. This article stated in part: *67 "Neil A. Salonen, president of the church in the United States, denounced the document, written in 1963, as 'clearly labeled as "unevaluated” and "appraisal of contents tentative.’” The document to which Mr. Salonen referred in his statement was so labeled, but at least two subsequent intelligence reports released at the same time by the House subcommittee on international organizations confirmed and elaborated on the links between the church and the K.C.I.A. 'tentatively’ noted in the first intelligence report. The two subsequent documents had no qualifications.” Plaintiff alleges, in essence, that the use of the word "confirmed” implies that the information contained in the document written in 1963 had been verified by independent sources, and, thus, its usage was patently unfair.
With this background in mind, we now turn to an examination of the statutory language upon which defendant bases its defense. Section 74 of the Civil Rights Law provides, in relevant part, that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding.” For a report to be characterized as "fair and true” within the meaning of the statute, thus immunizing its publisher from a civil suit sounding in libel, it is enough that the substance of the article be substantially accurate. As stated by this court in Briarcliff Lodge Hotel v Citizen-Sentinel Publishers (260 NY 106, 118): "[A] fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated.” (See, also, Keogh v New York Herald Tribune, 51 Misc 2d 888, 894, affd 28 AD2d 1209, mot for lv to app den 21 NY2d 955; George v Time, Inc., 259 App Div 324, 328-329, affd 287 NY 742; Hanft v Heller, 64 Misc 2d 947; Edmiston v Time, Inc., 257 F Supp 22, 24-26.)
In light of this standard, we conclude that the newspaper articles which appellant Unification Church claims to be libelous are, as a matter of law, "fair and true” accounts of intelligence reports released by the House Subcommittee on International Relations investigating Korean-American affairs! We agree with the courts below that the newspaper articles here at issue neither assigned to the intelligence reports allegations not contained in those documents, nor added, by virtue of word usage or otherwise, greater credence to those documents than was appropriate considering their *68 nature as unverified and unevaluated claims linking appellant to Korean influences.
Our conclusion today rests upon the realization that newspaper accounts of legislative or other official proceedings must be accorded some degree of liberality. When determining whether an article constitutes a "fair and true” report, the language used therein should not be dissected and analyzed with a lexicographer’s precision. This is so because a newspaper article is, by its very nature, a condensed report of events which must, of necessity, reflect to some degree the subjective viewpoint of its author. Nor should a fair report which is not misleading, composed and phrased in good faith under the exigencies of a publication deadline, be thereafter parsed and dissected on the basis of precise denotative meanings which may literally, although not contextually, be ascribed to the words used.
Here, there is no showing that defendant misquoted any material contained in the intelligence reports. While the use of the phrases "stated as fact” and "confirmed and elaborated” may denote to some degree, a sense of legitimacy which, in hindsight, could be characterized as imprudent given the unverified nature of the reports, this observation does not, in and of itself, render the newspaper articles unfair. Quite simply, the intelligence reports did state "facts” as perceived by the unidentified source and it can hardly be disputed that subsequent reports, albeit unverified, could confirm and elaborate upon the initial information conveyed by that informant.
Since summary judgment to the defendant was properly granted, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed, with costs.

 Plaintiff no longer contends that the first article printed by defendant is not a "fair and true” report of a legislative proceeding within the meaning of section 74 of the Civil Rights Law. Had we reached this issue, however, we would have concluded that the courts below correctly found this article to be a fair and true report of legislative proceedings and, thus, privileged.