OPINION OF THE COURT
Sheila Abdus-Salaam, J.
This is a libel action involving a magazine article about Rus *659 sian organized crime that was published in the monthly magazine Details. The publication is owned by defendant Conde Nast Publications, Inc., whose parent corporation is defendant Advance Magazine Publishers, Inc. Defendant Michael J. Caruso is the editor-in-chief and defendant Linda Mason is the publisher of Details. Defendant Robert I. Friedman is the author of the article. Plaintiff Felix Komarov is the owner of an art gallery in Manhattan and a restaurateur. Defendants here move for dismissal of the complaint pursuant to CPLR 3211 (a) (1) and (7), or in the alternative, for summary judgment pursuant to CPLR 3211 (c). For the reasons stated below, the motion is granted and the complaint is dismissed for failure to state a cause of action.
The magazine article, entitled Power Play, describes itself as an exclusive report revealing how the Russian mob has muscled its way into the National Hockey League. One of the subjects of the article is Slava Fetisov, who was questioned by the author, Mr. Friedman, in connection with the article. Mr. Fetisov is said to be linked to the mob, and a close associate of Vyacheslav Ivankov. The article quotes a confidential FBI report as describing Mr. Ivankov “as a shrewd and respected leader over a group of ruthless members knowledgeable in business, financial, legal and government operations * * * In addition to extortion, money laundering, drug trafficking, Ivankov is suspected of not only arranging numerous murders but bragging about them.” (Details, at 146.) Plaintiff Komarov is mentioned in the article in connection with the author’s interview of Fetisov, as follows:
“Fetisov’s patience is wearing thin, so I try another tack, asking him to explain his acquaintance with a New York art dealer and hockey fan named Felix Komarov — a man that the FBI asserts is Ivankov’s main money launderer and the ‘chief extortionist of émigré businessmen in New York,’ though Komarov vehemently denies the accusations.
“ ‘Why do you have to put these things together?’ he asks. ‘They are not related * * * I don’t [know] what you’re talking about anyhow.’
“ ‘If you go to Brighton Beach,’ I say, ‘and mention the name Komarov, its like saying John Gotti. Everybody knows who he is.’
“Fetisov continues to insist that he has no criminal dealings with Komarov or Ivankov whatsoever, and calls such charges ‘false allegations.’ He is completely exasperated. ‘You’re not probably allowed to ask these kinds of questions, right?’ Fetisov *660 asks incredulously. ‘Are you allowed to ask any questions you want?’
“ ‘Sure. Yes. This is America.’
“Fetisov realizes there is only one escape: Furious, he stands and orders me to leave. ‘The interview,’ he says, ‘is over.’ ” (Details, at 147.)
Plaintiffs complaint alleges, inter alia, that the aforementioned description of him as Ivankov’s main money launderer and the chief extortionist of émigré businessmen in New York is defamatory. However, defendants have demonstrated that these statements are protected by the privilege accorded by Civil Rights Law § 74, which provides that “[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding”.
The information about Komarov being an associate of Ivankov and a money launderer was obtained from the affidavit of an FBI agent which was filed in support of a wiretap application in Federal court. The privilege established by the Civil Rights Law applies not only to a transcript of the judicial proceeding itself, “but also to any pleading made within the course of the proceeding (Campbell v New York Evening Post, 245 NY 320)” (Branca v Mayesh, 101 AD2d 872, 873, affd 63 NY2d 994) and by extension, should also apply to affidavits submitted in the proceeding (see, Posato v Oken, 24 Media L Rptr 1285, 1286 [Sup Ct, Monroe County, NY 1995]).
The information about Komarov being known as an extortionist of émigré businessmen was obtained from an FBI report on the Ivankov organization, and, thus, the statements are within the ambit of the statutory privilege accorded a fair and true report of an official proceeding. In disputing that the FBI report is the record of an “official proceeding” plaintiff argues that the FBI report was prepared for internal FBI use only, and that since it was not prepared for public consumption, it “should not be awarded the protections of [Civil Rights Law] Section 74”. However, this argument is unavailing. As was observed by the First Department in Freeze Right Refrig. & Air Conditioning Servs. v City of New York (101 AD2d 175, 182), “[T]he activities of the agency need not be public for the statutory privilege to apply. The report is protected as long as it concerns activities which are within the prescribed duties of a public body. The test is whether the report concerns ‘action taken by a person officially empowered to do so.’ (Farrell v New York Evening Post, 167 Misc, at p 416.)”
*661 Plaintiff also argues, in opposition to defendants’ motion for dismissal, that the statements in the article concerning him cannot be considered a fair and true report of the FBI affidavit and report. Plaintiff takes great umbrage with the article’s representation that the FBI “asserts” that Komarov is Ivankov’s “main” money launderer and extortionist of “émigré businessmen” in New York. He points out that the FBI agent’s affidavit states that the FBI has been advised that Komarov launders money for Ivankov, and that this is not the same thing as the FBI asserting this claim. In this regard, he also stresses that the FBI report states that Komarov reportedly controls all extortions of Russian émigré businessmen in the New York area, and that the words “reportedly” and “asserts” have significantly different meanings. Plaintiff also objects to the article’s reference to him as being Ivankov’s main money launderer, when the word “main” is not used in any of the FBI documents, and points out that the article describes him as an extortionist of émigré businessmen in New York, while the FBI report refers only to him extorting Russian émigrés.
Yet, none of these departures from the exact language used by the FBI in its report and affidavit serve to remove the magazine article from the protection of Civil Rights Law § 74. As was noted by the Court of Appeals in Holy Spirit Assn. for Unification of World Christianity v New York Times Co. (49 NY2d 63, 67), “[f]or a report to be characterized as ‘fair and true’ within the meaning of the statute, thus immunizing its publisher from a civil suit sounding in libel, it is enough that the substance of the article be substantially accurate.” In Becher v Troy Publ. Co. (183 AD2d 230), a newspaper article was held privileged even though there was some ambiguity as to whether plaintiff had been indicted on felony bribery charges, when in fact he had only been charged with the misdemeanors of making a false sworn statement and conspiracy. In contrast, a newspaper article was not accorded the protection of the Civil Rights Law when it inaccurately reported that an individual had pleaded guilty to committing the crime of public lewdness, when in fact he had only been charged and a dismissal was pending (see, Fraser v Park Newspapers, 246 AD2d 894).
This court is guided by the Court of Appeals caution that “[w]hen determining whether an article constitutes a ‘fair and true’ report, the language used therein should not be dissected and analyzed with a lexicographer’s precision.” (Holy Spirit Assn. for Unification of World Christianity v New York Times *662 Co., 49 NY2d 63, 68, supra.) In this case, the deviation between the words and descriptions used in the magazine article and the FBI documents does not impair the article’s fair and true report of the substance of the documents. Here, the published account of the judicial and official proceedings does not have “a different effect on the reader’s mind than the actual truth, if published.” (Goldreyer, Ltd. v Van de Wetering, 217 AD2d 434, 436.)
Plaintiff’s complaint also alleges that the reference to him being as well known in Brighton Beach as is John Gotti (presumably in other circles) is defamatory. However, this statement, especially read in the context of the article, where the author was clearly trying to elicit a response from the recalcitrant hockey player Fetisov, is “rhetorical hyperbole” and not actionable. (See, Greenbelt Coop. Publ. Assn. v Bresler, 398 US 6, 13-14; see also, Milkovich v Lorain Journal Co., 497 US 1, 16; Gross v New York Times Co., 82 NY2d 146, 152.)
As was noted by the Court of Appeals in Gross (supra, at 153), “in determining whether a particular communication is actionable, we continue to recognize and utilize the important distinction between a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener * * * and a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts.” The latter type of statement is not actionable because “as was noted by the dissenting opinion in Milkovich v Lorain Journal Co. (supra, at 26-27, 28, n 5 [Brennan, J.]), a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience, as conjecture.” (Gross v New York Times Co., supra, at 154.) Since the reference to plaintiff being as well known as John Gotti is not a “fact”, capable of being proven false (see, Gross v New York Times Co., supra, at 153), and is clearly understood as conjecture, it cannot be the basis of a defamation claim.
Finally, the cause of action for intentional infliction of emotional distress is dismissed. It is based upon a publication which this court has concluded is protected under the Civil Rights Law. Here, as in Levin v McPhee (917 F Supp 230, 242, affd 119 F3d 189), “[w]ere liability imposed in such a situation, *663 the * * * protection[*] would be illusory.” In any event, the actions of defendants do not rise to the level required to sustain a cause of action for intentional infliction of emotional distress “extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.” (Freihofer v Hearst Corp., 65 NY2d 135, 143.)

 In Levin (supra), the protection sought to be preserved was constitutional. In this case, the protection is statutory.