[887 NYS2d 592]

MICHAEL CHOLOWSKY, Appellant-Respondent, v DENISE CIVI-LETTI et al., Respondents-Appellants.

Second Department, October 6, 2009

### APPEARANCES OF COUNSEL

*Sullivan Gardner, P.C.*, New York City (*Peter Sullivan* of counsel), for appellant-respondent.

*Levine Sullivan Koch & Schulz, LLP*, New York City (*David A. Schulz* of counsel), for respondents-appellants.

### OPINION OF THE COURT

CHAMBERS, J.

At issue here is whether the plaintiff's action to recover damages for libel based upon the publication of two articles by the defendant Times/Review Newspapers Corporation (hereinafter the defendant newspaper), which were written by the defendant Denise Civiletti, was properly dismissed.

In 2004 the plaintiff obtained a permit from the New York State Department of Environmental Conservation (hereinafter DEC) to operate a solid waste facility after incorrectly stating on his application that he was never convicted of a crime involving fraud, bribery, or an offense against public administration.

The newspaper articles published by the defendant newspaper in December 2006, upon which the plaintiff's causes of action are predicated, reported that in 1999, the plaintiff pleaded guilty to a felony count of conspiracy to defraud the United States and was sentenced to probation for a period of one year, and "evidence gathered by federal investigators established that" the mastermind of the scheme, Joseph Provenzano, was using the plaintiff's hauling permit to dump hazardous waste in the Brookhaven landfill. The articles further stated that the plaintiff was involved in a "bribery scheme" to gain access to the Brookhaven landfill. The defendants further reported that the plaintiff testified in 1999 that he paid $20,000 in bribes to Republican Party leader John Powell for the right to dump at the town landfill in Yaphank.

The records of the federal judicial action indicated that in 1999, the plaintiff was charged in federal court with conspiracy under 18 USC § 371 to make corrupt payments, for making cash payments to Joseph Lapienski, an agent of the Town of Brookhaven, to gain access to the Brookhaven landfill. The plaintiff pleaded guilty in the federal action, acknowledging during his plea colloquy that he allowed other truckers to enter the Brookhaven landfill using his permit. He further acknowledged that he made payments of $2,000 per month for 10 months (totalling $20,000) to John Powell. The judgment entered in the case stated that the plaintiff pleaded guilty to "conspiracy to make corrupt payments, a class D felony," and the plaintiff was sentenced to probation for a period of one year.

As a term of his plea of guilty, no criminal charges would be brought against him for his "heretofore disclosed participation in . . . tax fraud." We note that the plaintiff failed to plead the allegedly libelous statements about tax fraud in the complaint, therefore such statements, if any, are not before us (see Hausch v Clarke, 298 AD2d 429 [2002]).

Although the scheme did not involve defrauding the United States, the computerized docket in the federal court described the crime as "conspiracy to defraud the United States." The mastermind of the scheme, Provenzano, was indicted in federal court, and the indictment described the plaintiff as John Doe No. 1 and the plaintiff's company as Hauling Company A. The initial criminal complaint against Provenzano stated that wiretaps disclosed that Provenzano was discussing dumping hazardous waste in the landfill, using Hauling Company A.

In 2007 the DEC revoked the plaintiff's permit and the plaintiff commenced the instant action to recover damages for

libel. The defendants moved, inter alia, to dismiss the complaint pursuant to CPLR 3211 (a) (1) based upon documentary evidence, and CPLR 3211 (a) (7) for failure to state a cause of action. The defendants asserted that (1) the allegedly defamatory statements were protected by an absolute privilege under Civil Rights Law § 74 for "fair and true" reports of judicial or official proceedings, (2) the plaintiff, as a public figure with respect to his permit applications, was required to prove actual malice, but failed to make such a showing, and (3) this action was a strategic lawsuit against public participation, thereby entitling the defendants to the special protections afforded under Civil Rights Law § 76-a (hereinafter the anti-SLAPP statute).

In an affidavit in support of the motion, Civiletti stated that in writing her article, she relied upon the criminal docket in the federal case, as well as articles previously published in Newsday about the criminal prosecution. The plaintiff, in opposition, asserted that he was not involved in a conspiracy to commit bribery, but was actually the victim of extortion and never knowingly dumped hazardous materials or allowed others to use his permit to dump hazardous materials.

In the order appealed from, the Supreme Court held that (1) the statements at issue were covered by an absolute privilege under Civil Rights Law § 74, and (2) the plaintiff failed to prove actual malice or to satisfy the gross irresponsibility standard under *Chapadeau v Utica Observer-Dispatch* (38 NY2d 196, 199 [1975]). The Supreme Court held that the defendants' reporting was substantially correct, except for the statement that Provenzano used the plaintiff's permit to dump hazardous materials. With respect to Provenzano, the evidence gathered by federal officials indicated that Provenzano planned to dump hazardous waste, but failed to establish that he, in fact, did so. However, the court held that despite this overstatement, the reporting of the judicial proceedings was "substantially correct" and, therefore, satisfied Civil Rights Law § 74 (*see Cholowsky v Civiletti*, 16 Misc 3d 1138[A], 2007 NY Slip Op 51742[U]). The court further held that the anti-SLAPP statute was not applicable to media defendants such as Civiletti and the defendant newspaper.

On appeal, the plaintiff contends that Civil Rights Law § 74 does not apply, on the ground that the defendants acquired some of the information through secondary sources, such as prior publication of details of the judicial proceeding in Newsday.

Civil Rights Law § 74, provides, in pertinent part: "A civil action cannot be maintained . . . for the publication of a fair and true report of any judicial proceeding."

The purpose of Civil Rights Law § 74 "is the protection of reports of judicial proceedings which are made in the public interest" (*Williams v Williams*, 23 NY2d 592, 599 [1969]). This provision originally was enacted in 1854 (*see* L 1854, ch 130, §§ 1, 2), as a qualified privilege for newspapers publishing "a fair and true report" of "any judicial, legislative, or other public and official proceedings" (former Code Civ Pro § 1907; former Civil Practice Act § 337). In 1930, former Civil Practice Act § 337 was amended to make the privilege absolute (*see* L 1930, ch 619) and, in 1940, the privilege was extended from newspapers to "any person, firm or corporation" (*see* L 1940, ch 561).

"The case law has established a liberal interpretation of the 'fair and true report' standard of Civil Rights Law § 74 so as to provide broad protection to news accounts of judicial or other official proceedings" (*Becher v Troy Publ. Co.*, 183 AD2d 230, 233 [1992]). "For a report to be characterized as 'fair and true' within the meaning of the statute, thus immunizing its publisher from a civil suit sounding in libel, it is enough that the substance of the article be substantially accurate" (*Holy Spirit Assn. for Unification of World Christianity v New York Times Co.*, 49 NY2d 63, 67 [1979]). This is consistent with the common law of libel, which " 'overlooks minor inaccuracies and concentrates upon substantial truth' " (*Shulman v Hunderfund*, 12 NY3d 143, 150 [2009], quoting *Masson v New Yorker Magazine, Inc.*, 501 US 496, 516 [1991]).

■ Before addressing the issue of whether the defendants published a "fair and true report," it is also incumbent on the party asserting the privilege to establish that the statements at issue reported on a "judicial proceeding" (*Wenz v Becker*, 948 F Supp 319, 323 [1996]). If the publication does not purport to comment on a judicial proceeding, Civil Rights Law § 74 is inapplicable (*see Rivera v Greenberg*, 243 AD2d 697 [1997]; *Ramos v El Diario Publ. Co.*, 16 AD2d 915, 916 [1962]; *Kelley v Hearst Corp.*, 2 AD2d 480, 483-484 [1956]; *Keogh v New York Herald Tribune*, 51 Misc 2d 888 [1966], *affd* 28 AD2d 1209 [1967]; *Vosbury v Utica Daily Press Co.*, 105 Misc 134 [1918]; *Hughes v Washington Daily News Co.*, 193 F2d 922 [1952]). "If the context in which the statements are made make it 'impossible for the ordinary viewer [listener or reader] to determine

whether defendant was reporting' '' on a judicial proceeding, the absolute privilege does not apply (*Wenz v Becker*, 948 F Supp at 323, quoting *Corporate Training Unlimited, Inc. v National Broadcasting Co., Inc.*, 868 F Supp 501, 509 [1994]). In the instant case, the publications explicitly stated that they were describing the criminal proceedings. Therefore, Civil Rights Law § 74 was applicable.

In our view, once it is established that the publication is reporting on a judicial proceeding, "how a reporter gathers his information concerning a judicial proceeding is immaterial provided his [or her] story is a fair and substantially accurate portrayal of the events in question" (*Binder v Triangle Publs., Inc.*, 442 Pa 319, 327, 275 A2d 53, 58 [1971]; *see Medico v Time, Inc.*, 643 F2d 134, 146 [1981], *cert denied* 454 US 836 [1981]). Contrary to the plaintiff's contention, "the privilege is available where a reporter who purports to report on an official proceeding does not have personal knowledge of the proceeding but instead relies on an intermediary who does" (*Bufalino v Associated Press*, 692 F2d 266, 271 [1982], *cert denied* 462 US 1111 [1983]). Accordingly, the fact that the defendants derived information about the judicial proceedings from secondary sources did not mean that Civil Rights Law § 74 was inapplicable.

Further, there was no requirement that the publication report the plaintiff's side of the controversy (*see McDonald v East Hampton Star*, 10 AD3d 639 [2004]; *Glendora v Gannett Suburban Newpapers*, 201 AD2d 620 [1994]). Since the publications did not produce a different effect on a reader than would a report containing the precise truth, they satisfied the requirements of Civil Rights Law § 74, and were absolutely privileged (*see Karedes v Ackerley Group, Inc.*, 423 F3d 107, 119 [2005]; *Zerman v Sullivan & Cromwell*, 677 F Supp 1316, 1322 [1988]; *Dibble v WROC TV Channel 8*, 142 AD2d 966, 967 [1988]; *George v Time, Inc.*, 259 App Div 324, 328 [1940], *affd* 287 NY 742 [1942]).

■ Assuming, arguendo, that Civil Rights Law § 74 was not applicable, the plaintiff would still have to satisfy a high burden of proof applicable to the news media. As noted by the Supreme Court, if a newspaper defames a private figure, it can only be held liable if the reporting was "grossly irresponsible" (*Chapadeau v Utica Observer-Dispatch*, 38 NY2d 196, 199 [1975]). However, the plaintiff is a limited-purpose public figure because he thrust himself into the forefront of a public controversy by engaging in business activities which were a matter of public

concern (*Huggins v Moore*, 94 NY2d 296, 302 [1999]; *Gertz v Robert Welch, Inc.*, 418 US 323, 345 [1974]). Therefore, the test in *New York Times Co. v Sullivan* (376 US 254 [1964]) applies, and the defendants may only be held liable if they published information they knew was false or acted with reckless disregard of the truth. The documentary evidence in the record established that this standard was not met.

In view of the foregoing, the order dismissing the plaintiff's complaint must be affirmed insofar as appealed from.

■ The cross appeal must be dismissed on the ground that the defendants are not aggrieved by the order appealed from (*see* CPLR 5511). "Merely because the order appealed from contains language or reasoning that a party deems adverse to its interests does not furnish 'a basis for standing to take an appeal' " (*Castaldi v 39 Winfield Assoc., LLC*, 22 AD3d 780, 781 [2005], quoting *Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d 465, 472-473 [1986]; *see Photonics Indus. Intl., Inc. v Xiaojie Zhao*, 39 AD3d 610 [2007]; *ABC Mech. Sys. Corp. v New York State Off. of Gen. Servs.*, 238 AD2d 532, 533 [1997]; *M.J. & K. Co. v Matthew Bender & Co.*, 220 AD2d 488, 489 [1995]). We need not address the arguments raised on the cross appeal as an alternative ground for affirmance (*see Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539 [1983]), since there are sufficient bases for affirmance without considering those arguments. Therefore, the order is affirmed insofar as appealed from and the cross appeal is dismissed.

DILLON, J.P., ANGIOLILLO and LEVENTHAL, JJ., concur.

Ordered that the order is affirmed insofar as appealed from; and it is further,

Ordered that the cross appeal is dismissed; and it is further,

Ordered that one bill of costs is awarded to the defendants.