# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**931**

**CA 12-00560**

PRESENT: CENTRA, J.P., PERADOTTO, CARNI, LINDLEY, AND SCONIERS, JJ.

---

CHRISTOPHER J. ALF, PLAINTIFF-APPELLANT,

V                                                   MEMORANDUM AND ORDER

THE BUFFALO NEWS, INC., DEFENDANT-RESPONDENT.

---

CARTER LEDYARD & MILBURN LLP, NEW YORK CITY (JOHN J. WALSH OF COUNSEL), AND HARRIS BEACH PLLC, BUFFALO, FOR PLAINTIFF-APPELLANT.

HISCOCK & BARCLAY, LLP, BUFFALO (JOSEPH M. FINNERTY OF COUNSEL), FOR DEFENDANT-RESPONDENT.

---

Appeal from an order of the Supreme Court, Erie County (Gerald J. Whalen, J.), entered December 28, 2011 in a defamation action. The order, among other things, granted defendant's motion for summary judgment.

It is hereby ORDERED that the order so appealed from is affirmed without costs.

Memorandum: Plaintiff, the chairperson and sole shareholder of National Air Cargo Holdings, Inc., which wholly owns National Air Cargo, Inc. (NAC), commenced this defamation action after defendant published a series of articles stemming from a guilty plea by NAC in federal court. Supreme Court properly granted defendant's motion for summary judgment dismissing the amended complaint based on the defense of absolute privilege under Civil Rights Law § 74. That statute provides in relevant part that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding" (*id.*). The term "fair and true report" has been given a liberal interpretation (*see Cholowsky v Civiletti*, 69 AD3d 110, 114; *Becher v Troy Publ. Co.*, 183 AD2d 230, 233). " 'When determining whether an article constitutes a "fair and true" report, the language used therein should not be dissected and analyzed with a lexicographer's precision. This is so because a newspaper article is, by its very nature, a condensed report of events which must, of necessity, reflect to some degree the subjective viewpoint of its author' " (*Becher*, 183 AD2d at 234, quoting *Holy Spirit Assn. for Unification of World Christianity v New York Times Co.*, 49 NY2d 63, 68). A report is "fair and true" within the meaning of the statute if it is "substantially accurate" (*Holy Spirit Assn. for Unification of World Christianity*, 49 NY2d at 67; *see Tenney v Press-Republican*, 75 AD3d 868, 868; *Cholowsky*, 69 AD3d at 114).

The crux of the amended complaint is that the factual premise of the defamatory articles, i.e., that plaintiff and NAC admitted that they repeatedly and fraudulently overcharged the government by millions of dollars, was utterly false and defamatory.  The statements referencing NAC only, and not plaintiff, were not "of and concerning" plaintiff, and the amended complaint therefore was subject to dismissal to the extent that the allegedly defamatory statements did not name plaintiff (*Carlucci v Poughkeepsie Newspapers*, 57 NY2d 883, 885), apart from the defense of absolute privilege under Civil Rights Law § 74.  The statements "of and concerning" plaintiff set forth, inter alia, that plaintiff avoided any jail time based on a plea deal, and only one statement of the 36 allegedly defamatory statements set forth in the amended complaint directly asserted that plaintiff cheated the government.  We agree with defendant that the articles read as a whole, including all of the allegedly defamatory statements (*see Miller v Journal-News*, 211 AD2d 626, 627), would lead the average reader to conclude that NAC, not plaintiff himself, had cheated the government.

We further agree with defendant in any event that the defense under Civil Rights Law § 74 applied to all of the allegedly defamatory statements.  NAC pleaded guilty to only a single charge of falsifying a proof of delivery document, but the plea agreement also included a provision requiring NAC to pay almost $28 million in fines and restitution.  The prosecutor set forth the reasoning supporting the fines and restitution, i.e., that NAC agreed "for purposes of relevant conduct and for this plea agreement that the loss to the United States has been established by the government to be the sum of $4,400,000 for the time period January 1999 to and including March 2002."  The prosecutor further stated that NAC's owner would not "be processed by my office . . . for the criminal offenses that relate to the facts set forth in paragraph 4 of the [plea] agreement, which are the falsifications, proofs of delivery sent as confirmation of delivery dates."

In view of the agreement by NAC to the amount of the government's loss, together with its admission to submitting a false document to the government on at least one occasion, we conclude that the statements in the articles that NAC repeatedly overcharged the government, and that there would be no jail time for plaintiff and other company officials, were substantially accurate (*see generally Mills v Raycom Media, Inc.*, 34 AD3d 1352, 1353).  Indeed, we note that the Department of Justice's own press releases were similar to the statements made in the newspapers articles that plaintiff alleges were defamatory.  Plaintiff contends that the articles were false because NAC settled with the government to avoid being suspended as an air freight forwarder, and the dispute over air versus truck transport stemmed from a good-faith dispute over the applicable federal regulations.  However, there is "no requirement that the publication report the plaintiff's side of the controversy" (*Cholowsky*, 69 AD3d at 115; *see Tenney*, 75 AD3d at 868-869; *Glendora v Gannett Suburban Newspapers*, 201 AD2d 620, 620, *lv denied* 83 NY2d 757).

All concur except CARNI and SCONIERS, JJ., who dissent in part and

vote to modify in accordance with the following Memorandum:  We respectfully disagree with the conclusion of our colleagues that Supreme Court properly granted defendant's motion for summary judgment dismissing the amended complaint in its entirety, and we therefore dissent in part.  We conclude that the statements that were "of and concerning" plaintiff were "reasonably susceptible of a defamatory connotation" (*James v Gannett Co.*, 40 NY2d 415, 419, *rearg denied* 40 NY2d 990; *see Bee Publs. v Cheektowaga Times*, 107 AD2d 382, 382-383, 386) and that defendant is not entitled to the protection afforded by Civil Rights Law § 74 for those statements.  We thus would modify the order by denying defendant's motion to the extent that it concerns the statements pertaining specifically to plaintiff, and we would strike the affirmative defense of Civil Rights Law § 74 as to those statements.

On October 25, 2007, general counsel for National Air Cargo, Inc. (NAC), with approval from NAC's board of directors, pleaded guilty on behalf of NAC to one count of filing a false statement.  The plea agreement was described by the Federal District Court as a "global settlement" in satisfaction of "all Federal offenses committed" by the corporation during the relevant time period.  In the days and weeks following the plea, defendant published a series of articles reporting that the company, inter alia, admitted to "cheating" the United States military out of millions of dollars.  Throughout the series of articles, defendant made numerous statements naming plaintiff specifically, and reporting that plaintiff had evaded serving jail time as a result of the plea deal by employing "the best lawyers money could buy" and a "dream team" of attorneys.  An editorial published on November 8, 2007, asked "why in the name of decency should the leaders of National Air Cargo escape personal punishment for cheating the U.S. Defense Department—and, therefore, American troops and taxpayers—during wartime?"  It went on to say, "there's no law that says companies and their leaders can't be moral, ethical, patriotic and plain honest."  In another article, published March 2, 2008, defendant reported that "[t]he couple [referring to plaintiff and his wife] also maintains that it stopped cheating the government in 2005."  Notably, plaintiff was not a named defendant in the federal criminal action against NAC and there was no admission of criminal liability on the part of plaintiff during the proceedings (*see generally Fraser v Park Newspapers of St. Lawrence*, 246 AD2d 894, 895-896).

"For a report to be characterized as 'fair and true' within the meaning of [Civil Rights Law § 74], . . . it is enough that the substance of the article be substantially accurate" (*Holy Spirit Assn. for Unification of World Christianity v New York Times Co.*, 49 NY2d 63, 67).  Because the various reports impute wrongdoing to plaintiff as an individual, they produce "a different effect on the mind of the reader from that which the pleaded truth would have produced" (*Dibble v WROC TV Channel 8*, 142 AD2d 966, 967 [internal quotation marks omitted]) and "suggest[] more serious conduct than that actually suggested in the official proceeding" (*Daniel Goldreyer, Ltd. v Van de Wetering*, 217 AD2d 434, 436).  We therefore conclude that, with respect to the reports specifically concerning plaintiff, defendant did not act " 'as the agent of the public, reporting only that which

others could hear for themselves were they to attend the proceedings' " (*Dibble*, 142 AD2d at 968, quoting *Hogan v Herald Co.*, 84 AD2d 470, 477-478, *affd* 58 NY2d 630).  Thus, in our view, defendant is not entitled, as a matter of law, to protection under Civil Rights Law § 74 for the statements pertaining to plaintiff specifically.