21-1097-cv
*BYD Company Ltd. v. VICE Media LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of March, two thousand twenty-two.

Present:     DEBRA ANN LIVINGSTON,
                  *Chief Judge*,
               AMALYA L. KEARSE,
               EUNICE C. LEE,
                  *Circuit Judges*.

_____

BYD COMPANY LTD.,

     *Plaintiff-Appellant*,

    v.                                                          21-1097

VICE MEDIA LLC,

     *Defendant-Appellee*.

_____

For Plaintiff-Appellant:      DILAN A. ESPER and Charles J. Harder, Harder LLP, New York, NY.

For Defendant-Appellee:    RACHEL F. STROM and Amanda B. Levine, Davis Wright Tremaine LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Nathan, *J.*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant BYD Company Ltd. ("BYD") appeals from a March 31, 2021, judgment of the United States District Court for the Southern District of New York (Nathan, *J.*), granting Defendant-Appellee VICE Media LLC's ("VICE") motion to dismiss BYD's complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). In the Complaint, BYD brought one count of defamation under New York law, alleging that VICE defamed it when it published an article on its website on April 11, 2020 (the "VICE Article"), titled: "Trump Blacklisted This Chinese Company. Now It's Making Coronavirus Masks for U.S. Hospitals." App'x at 77. The district court dismissed the Complaint with prejudice on the ground that it fails to state a claim upon which relief can be granted because, among other reasons, the content of the headline of the VICE Article is privileged under New York law, and the Complaint did not plausibly plead actual malice with respect to an allegedly defamatory statement in the body of the VICE Article.[1] BYD timely appealed. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

"We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6) . . . , accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *Biro v. Conde Nast* ("*Biro II*"), 807 F.3d 541, 544 (2d Cir. 2015). To survive a motion to dismiss, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[1] The parties' briefs assume that New York law controls. That is "sufficient to establish choice of law." *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

## A. "Blacklist" Headline

BYD argues on appeal that the district court erred in concluding that the claims advanced in the headline of the VICE Article are protected under New York's fair and true reporting privilege. Section 74 of the New York Civil Rights Law provides, in relevant part, that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." N.Y. Civ. Rights Law § 74. "To be 'fair and true,' the account need only be 'substantially accurate.'" *McRedmond v. Sutton Place Rest. & Bar, Inc.*, 851 N.Y.S.2d 478, 480 (1st Dep't 2008) (internal quotation marks and citation omitted). "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (internal quotation marks and citation omitted). "A fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated." *Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 67 (1979) (internal quotation marks, citation, and alteration omitted). Moreover, "[w]hen determining whether an article constitutes a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision." *Id.* at 68. "Nor should a fair report which is not misleading, composed and phrased in good faith under the exigencies of a publication deadline, be thereafter parsed and dissected on the basis of precise denotative meanings which may literally, although not contextually, be ascribed to the words used." *Id.*

The district court properly concluded that both the headline and corresponding text of the VICE Article are privileged under New York Civil Rights Law § 74. The claim that BYD was "blacklisted" by President Trump is supported by the legislative history and text of Section 7613

of the National Defense Authorization Act for Fiscal Year 2020 ("NDAA"), signed into law by President Trump, which provides that federal funds

> shall not be used . . . for the procurement of rolling stock for use in public transportation if the manufacturer . . . is owned or controlled by, is a subsidiary of, or is otherwise related legally or financially to a corporation based in a country that—
>
>> "(i) is identified as a nonmarket economy country (as defined in section 771(18) of the Tariff Act of 1930 (19 U.S.C. 1677(18))) as of the date of enactment of this subsection;
>>
>> "(ii) was identified by the United States Trade Representative in the most recent report required by section 182 of the Trade Act of 1974 (19 U.S.C. 2242) as a foreign country included on the priority watch list defined in subsection (g)(3) of that section; and
>>
>> "(iii) is subject to monitoring by the Trade Representative under section 306 of the Trade Act of 1974 (19 U.S.C. 2416).

NDAA, Pub. L. No. 116-92, § 7613, 133 Stat. 1198, 2314 (2019). Because China meets the criteria of § 7613, as legislators, commentators, and BYD itself have acknowledged, *see* Supp. App'x at 16–17, 21, 29, 34–35, 37, the NDAA prohibits the use of federal funds for the purchase of rail cars and buses from BYD, an electric vehicle manufacturer based in Shenzhen, China, thus placing it on a forbidden list of manufacturers — in other words, a "blacklist." While BYD may wish for us to apply a "lexicographer's precision" to this term, "pars[ing] and dissect[ing]" a claim that is substantially true, that is not the law. *Holy Spirit*, 49 N.Y.2d at 68. We therefore affirm the district court's holding that the headline of the VICE Article is privileged under New York Civil Rights Law § 74.[2]

---

[2] BYD also appeals the district court's holding that the headline of the VICE Article is protected as a "fair index" of the Article's contents. *See Karedes*, 423 F.3d at 115 n.1 (recognizing the existence of a "fair index" privilege under New York law). Because we affirm the district court's decision on the alternative ground that the headline is privileged as a fair and true report of a legislative proceeding, we need not reach that holding.

**B. Statement Regarding Forced Labor**

BYD next argues that the district court erred in concluding that the Complaint failed to plausibly allege actual malice with respect to a statement in the body of the VICE Article claiming that a report from the Australian Strategic Policy Institute (the "ASPI Report") "identified" BYD as "one of 83 companies . . . using forced Uighur labor in its supply chain." App'x at 83. BYD asserts that VICE drafted that statement with actual malice because the ASPI Report "never said that BYD used forced labor in its supply chain." Br. of BYD at 12.

"Limited-purpose public figures who seek damages for defamatory statements must show that the statements were made with 'actual malice'—that is, with knowledge that the statements were false or with reckless disregard as to their falsity."[3] *Biro II*, 807 F.3d at 544. The standard imposes a "heavy burden of proof, a burden that is designed to assure to the freedoms of speech and press that breathing space essential to their fruitful exercise." *Contemp. Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988) (internal quotation marks and citations omitted). "Despite its name, the actual malice standard does not measure malice in the sense of ill will or animosity, but instead the speaker's subjective doubts about the truth of the publication." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001). "Although actual malice is subjective, a court typically will infer actual malice from objective facts, understanding that a defendant in a defamation action will rarely admit that he published the relevant statements with actual malice." *Biro II*, 807 F.3d at 545 (internal quotation marks and citation omitted). "The reckless conduct needed to show actual malice is not measured by whether a reasonably prudent man would have published, . . . but by whether there is sufficient evidence to permit the conclusion

---

[3] BYD has conceded that it is a limited-purpose public figure for purposes of this appeal.

that the defendant in fact entertained serious doubts as to the truth of his publication." *Scientology*, 238 F.3d at 174 (internal quotation marks and citation omitted). Further, "[a]ctual malice can be established using circumstantial evidence." *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013).

Federal Rule of Civil Procedure 9(b) allows malice to "be alleged generally," Fed. R. Civ. P. 9(b), "but 'does not give [a plaintiff] license to evade the less rigid—though still operative— strictures of Rule 8.'" *Biro II*, 807 F.3d at 545 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009)). And under Rule 8's plausible pleading standard, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 544 (quoting *Twombly*, 550 U.S. at 570). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "But 'naked assertions' or 'conclusory statements' are not enough." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The district court properly concluded that the Complaint failed adequately to plead actual malice with respect to the VICE Article's statement that the ASPI Report alleged that BYD used forced Uyghur labor in its supply chain. The ASPI Report amply supports the VICE Article's description of its allegations.[4] The ASPI Report provides:

> In all, ASPI's research has identified 83 foreign and Chinese companies *directly or indirectly benefiting from the use of Uyghur workers* outside Xinjiang through potentially abusive labour transfer programs as recently as 2019: . . . BYD . . . .

---

[4] We may consider both the VICE Article and the ASPI Report because both documents were attached as exhibits to the Complaint. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

App'x at 26 (emphasis added). To the extent that there is an appreciable difference in meaning between the statement that BYD used forced Uyghur labor "in its supply chain," App'x at 83, and the statement that BYD "directly or indirectly benefit[ted]" from such labor, App'x at 26, standing alone, it is far too insignificant to support a claim of actual malice.

Moreover, the VICE Article's description is buttressed by other statements in the ASPI Report as well. The ASPI Report further alleges that a company by the name of Hubei Yihong Precision Manufacturing Co. Ltd ("Hubei Yihong") used forced Uyghur labor, that Hubei Yihong is a subsidiary of Dongguan Yidong Electronic Co. Ltd ("Dongguan Yidong"), and that Dongguan Yidong "suppl[ies] directly to BYD." App'x at 55. These allegations place forced Uyghur labor directly into BYD's supply chain. Finally, the ASPI Report contains a flow chart purporting to show forced Uyghur labor moving from China's Xinjiang Province to Hubei Yihong, and components manufactured at Hubei Yihong moving to Dongguan Yidong, and finally, to BYD. App'x at 45. In other words, *through BYD's supply chain*. We therefore conclude that BYD's actual malice claim is not "plausible on its face" under Fed. R. Civ. P. 8, and that the district court did not err in so holding.[5] *Biro II*, 807 F.3d at 544 (quoting *Twombly*, 550 U.S. at 570).

---

[5] We note also that BYD's pleading with respect to actual malice is also flawed in that it does not "identify the individual responsible for publication" of the challenged statements in the VICE Article. *Palin v. New York Times Co.*, 940 F.3d 804, 810 n.9 (2d Cir. 2019) (quoting *Dongguk*, 734 F.3d at 123). For when actual malice is at issue, "the critical question is the state of mind *of those responsible for the publication*." *Id.* at 810 (emphasis added). But even if it is assumed *arguendo* that the Complaint implicitly pleads that the authors of the VICE Article, Daniel Newhauser and Keegan Hamilton, acted with actual malice, for the reasons set forth above, the Complaint still fails to meet the pleading standard.

We have considered BYD's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
